UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CIOX HEALTH, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-00040 (APM) |
| | ) | |
| ALEX M. AZAR II, Secretary of Health | ) | |
| and Human Services, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.   HHS cannot enforce 45 C.F.R. §164.524's relevant provisions against Ciox. .................. 2

II.  Ciox lacks Article III standing because it fails to satisfy the heightened burden to challenge government action that does not directly affect business associates. ................. 6

    a.   *Ciox must meet the heightened burden to prove Article III standing as a third party to the statute and regulation it challenges.* ...................................................... 6

    b.   *Ciox fails to meet its heightened standing burden, because it does not assert any cognizable injuries sufficiently causally connected to Defendants' actions.* ............. 7

III. Ciox's claims are unripe. ................................................................................................ 12

IV.  Ciox lacks statutory standing. ......................................................................................... 14

V.   The 2016 Guidance does not amount to final agency action. ........................................... 15

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Airline Serv. Providers Ass'n v. Los Angeles World Airports*,
  873 F.3d 1074 (9th Cir. 2017) ................................................................... 9

*Am. Inst. of Certified Pub. Accountants v. Internal Revenue Serv.*,
  199 F. Supp. 3d 55 (D.D.C. 2016) ............................................................ 14

*Appalachian Power Co. v. EPA*,
  208 F.3d 1015 (D.C. Cir. 2000) ................................................................ 15

*Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*,
  785 F.3d 710 (D.C. Cir. 2015) .................................................................. 16

*Bennett v. Spear*,
  520 U.S. 154 (1997) ........................................................................... 15, 19

*Bhd. of Locomotive Eng'rs. & Trainmen, a Div. of Rail Conf.-Int'l Bhd. of Teamsters v. Surface Transp. Bd.*,
  457 F.3d 24 (D.C. Cir. 2006) ..................................................................... 8

*Block v. Meese*,
  793 F.2d 1303 (D.C. Cir. 1986) ........................................................... 10, 11

*Bloomberg L.P. v. Commodity Futures Trading Comm'n*,
  949 F. Supp. 2d 91 (D.D.C. 2013) .............................................................. 6

*Bocage v. Acton Corp.*,
  No. 2:17-CV-01201-RDP, 2018 WL 905351 (N.D. Ala. Feb. 15, 2018) ................................... 4

*Calumet Indus., Inc. v. Brock*,
  807 F.2d 225 (D.C. Cir. 1986) .................................................................. 14

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ............................................................................. 11

*Consolidation Coal Co. v. Fed. Mine Safety & Health Review Comm'n*,
  824 F.2d 1071 (D.C. Cir. 1987) ................................................................ 13

*General Elec. v. EPA*,
  290 F.3d 377 (D.C. Cir. 2002) .................................................................. 18

*Hand v. Perez*,
  No. CV 14-0880 (BAH), 2015 WL 3534162 (D.D.C. June 5, 2015), *aff'd*, 672 F. App'x 24
  (D.C. Cir. 2016) .................................................................................. 11

*Indep. Equip. Dealers Ass'n v. EPA,*
   372 F.3d 420 (D.C. Cir. 2004) ........................................................................... 15

*Libertarian Nat'l Comm., Inc. v. Fed. Election Comm'n,*
   228 F. Supp. 3d 19 (D.D.C. 2017) ......................................................................... 8

*Long Term Care Pharm. All. v. Leavitt,*
   530 F. Supp. 2d 173 (D.D.C. 2008) ............................................................. 6, 9, 10

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .............................................................................................. 7

*Mendoza v. Perez,*
   754 F.3d 1002 (D.C. Cir. 2014) ........................................................................... 15

*Mountain States Legal Found. v. Glickman,*
   92 F.3d 1228 (D.C. Cir. 1996) ............................................................................. 14

*Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales,*
   468 F.3d 826 (D.C. Cir. 2006) ......................................................................... 8, 11

*Perkins v. Vance-Cooks,*
   886 F. Supp. 2d 22 (D.D.C. 2012) ......................................................................... 7

*Select Specialty Hosp. of Atlanta v. Thompson,*
   292 F. Supp. 2d 57 (D.D.C. 2003) ......................................................................... 4

*Shaffer v. Def. Intelligence Agency,*
   601 F. Supp. 2d 16 (D.D.C. 2009) ....................................................................... 13

*Sprint Corp. v. FCC,*
   331 F.3d 952 (D.C. Cir. 2003) ....................................................................... 12, 13

*State Farm Mut. Auto. Ins. Co. v. Dole,*
   802 F.2d 474 (D.C. Cir. 1986) ............................................................................. 13

*State Nat'l Bank of Big Spring v. Lew,*
   795 F.3d 48 (D.C. Cir. 2015) ............................................................................... 13

*Tax Analysts & Advocates v. Blumenthal,*
   566 F.2d 130 (D.C. Cir. 1977) ............................................................................. 14

*Toilet Goods Ass'n, Inc. v. Gardner,*
   387 U.S. 158 (1967) ....................................................................................... 12, 13

*Tozzi v. U.S. Dep't of Health & Human Servs.*,
   271 F.3d 301 (D.C. Cir. 2001) ................................................................ 10

*Welborn v. Internal Revenue Serv.*,
   218 F. Supp. 3d 64 (D.D.C. 2016) ............................................................ 7

## Statutes

42 U.S.C. § 17934 ..................................................................................... 3, 4

42 U.S.C. § 17935 .............................................................................. 1, 2, 4, 5

## Regulations

42 C.F.R § 164.524 ............................................................................... *passim*

45 C.F.R. § 160.103 ...................................................................................... 4

45 C.F.R. § 160.402 ................................................................................... 4, 5

45 C.F.R. § 164.500 ...................................................................................... 3

45 C.F.R. § 164.502 ................................................................................... 3, 4

45 C.F.R. § 164.504 ...................................................................................... 3

Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules Under the Health Information Technology for Economic and Clinical Health Act and the Genetic Information Nondiscrimination Act,
   78 Fed. Reg. 5566 (Jan. 25, 2013) ..................................................... 3, 17

## Legislative Material

H.R. Conf. Rep. No. 111-16 (2008), *as reprinted in* 2009 U.S.C.C.A.N. 1 .................................. 4

## INTRODUCTION

Ciox's Complaint has two fatal flaws. First, it seeks to challenge agency action that does not apply to business associates like itself, on the basis of injuries of its own making. Second, it challenges explanatory agency guidance that has no binding effect or other legal impact. These flaws warrant a full dismissal of Ciox's claims.

Ciox's opposition brief is heavy on invective but short on legal analysis that could overcome these two fatal flaws. It attempts to obscure the first flaw by pointing the court to a slew of *other* legal provisions that mention "business associate" and "must" or "required" in the same sentence. *See* Mem. in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Mem.") 18–21, ECF No. 12-1. But Ciox does not challenge those provisions here. The statutory and regulatory provisions at issue— 42 U.S.C. § 17935(e)(2) and 45 C.F.R. §164.524(c)—do not impose any requirements on business associates. Defendants have not enforced these provisions against business associates, nor could they. These facts, among the other defects identified by Defendants in their opening brief and explained further below, doom Ciox's claims on the basis of Article III standing, ripeness, and statutory standing.

Ciox tries to circumvent the second flaw by characterizing the challenged guidance as a series of commands. But it cannot escape the plain language of the guidance, which provides the U.S. Department of Health and Human Services' ("HHS") explanation of the law as well nonbinding options to assist covered entities in arriving at a reasonable, cost-based fee to charge in fulfilling individual requests for protected health information ("PHI"). Because the guidance is not final agency action as defined under the Administrative Procedure Act ("APA"), it is not subject to APA review and must be dismissed on that basis, as well as on ripeness grounds.

Because Ciox's Complaint suffers from numerous jurisdictional and procedural defects, it should be dismissed.

## ARGUMENT

### I.    *HHS cannot enforce 45 C.F.R. §164.524's relevant provisions against Ciox.*

Ciox contends that Defendants violated the Health Information Technology for Economic and Clinical Health ("HITECH") Act, 42 U.S.C. § 17935(e), by amending 42 C.F.R § 164.524 and by issuing guidance about this amendment. But neither provision regulates business associates like Ciox. Instead, these provisions regulate the covered entities with whom Ciox contracts. As a result, Ciox must satisfy a heightened pleading standard to show Article III standing, and has not come close to doing so. For similar reasons, its claims are not ripe, and it lacks statutory standing. *See* Defs.' Mot. to Dismiss ("Defs.' Mem.") 20–23, ECF No. 9.

In response, Ciox weaves together selective portions of other, inapposite statutory and regulatory provisions—as well as legislative history and statements in the Federal Register—to claim that Defendant U.S. Department of Health and Human Services ("HHS") can indeed enforce the complained-of provisions against it. A careful and complete reading of those provisions, however, reveals Ciox's argument to be untenable. And, tellingly, Ciox does not point to any instances where HHS has enforced 42 U.S.C. § 17935(e), as implemented in 45 C.F.R. §164.524, against Ciox or any other business associate. That is because HHS never has.

It is true that HHS does regulate business associates in some limited respects, and that business associates can be held directly liable for violations of certain provisions; none are relevant here.[1] Ciox's expansive read of the HITECH Act would afford HHS greater enforcement authority

---

[1] For example, "a business associate is directly liable under the Privacy Rule for uses and disclosures of protected health information that are not in accord with its business associate agreement or the Privacy Rule," and for "failing to make reasonable efforts to limit [PHI] to the

over business associates than the 2013 rule allows. The 2013 rule applies to business associates only "[*w*]*here provided*" 45 C.F.R. § 164.500(c) (emphasis added). Under the statutory and regulatory provisions disputed here, HHS *does not* directly regulate the fees that business associates can charge for fulfilling individual requests for PHI, as the Privacy Rule does not "provide" that the specific provision applies directly to business associates. *See* 45 C.F.R. § 164.524; *see also* 78 Fed. Reg. at 5598–99.

Ciox's arguments to the contrary rely on inapposite legal provisions. *First*, Ciox distorts the statutory and regulatory provisions governing the "use and disclos[ure]" of PHI by arguing that they apply to the fees Ciox can charge for the disclosure of PHI. *See* 42 U.S.C. § 17934 ("In the case of a business associate of a covered entity that obtains or creates [PHI] pursuant to a written contract . . . with such covered entity, the business associate may *use and disclose* such [PHI] only if such use or disclosure, respectively, is in compliance with each applicable requirement of section 164.504(e) of such title." (emphasis added)); 45 C.F.R. § 164.502(a)(3) ("A business associate may *use or disclose* protected health information only as permitted or required by its business associate contract or other arrangement pursuant to § 164.504(e) or as required by law." (emphasis added);[2] *id*. § 164.502(a)(4)(ii) (explaining that business associates are "required to *disclose* [PHI]

---

minimum necessary to accomplish the intended purpose of the use, disclosure, or request." 78 Fed. Reg. 5566, 5591 (Jan. 25, 2013); *see also* 45 C.F.R. § 164.502(b)(1).

[2] The referenced regulation, 45 C.F.R. § 164.504(e), establishes the "organizational requirements" for the uses and disclosures of PHI when a covered entity decides to disclose PHI to a business associate. When a covered entity decides to disclose PHI to a business associate and allow a business associate to "create, receive, maintain, or transmit protected health information on its behalf," the covered entity must "obtain[] satisfactory assurance that the business associate will appropriately safeguard the information[,]" 45 C.F.R. § 164.502(e), and memorialize that satisfactory assurance in a contract or other arrangement governed by § 164.504(e). Again, these requirements pertain to "*use and disclosure*" of PHI; the requirements do not extend to the fees to be charged for providing PHI to individuals.

3

as necessary to satisfy a covered entity's obligations under § 164.524(c)(2)(ii) and (3)(ii) with respect to an individual's request for an electronic copy" of PHI (emphasis added)).[3] Granted, business associates must "safeguard" the PHI that covered entities have entrusted to them from unwarranted dissemination and must therefore use and disclose PHI only in accordance with the various applicable provisions. *See* H.R. Conf. Rep. No. 111-16, at 493 (2008), *as reprinted in* 2009 U.S.C.C.A.N. 1, 46, 86. But HHS does not regulate business associates' payments for any permitted or required disclosures. *See also* 45 C.F.R. § 160.103 (defining "disclosure" as "the release, transfer, provision of access to, or divulging in any manner of information outside the entity holding the information" and "use" as "with respect to individually identifiable health information, the sharing, employment, application, utilization, examination, or analysis of such information within an entity that maintains such information").[4]

*Second*, Ciox relies on 42 U.S.C. § 17934(a) and 45 C.F.R. § 160.402 to argue that HHS can enforce 45 C.F.R. § 164.524's "third party directive" and fee limitations against business associates. Again, Defendants do not dispute that business associates can be penalized for violating certain provisions of Health Insurance Portability and Accountability Act ("HIPAA"). But

---

[3] Regarding § 164.502(a)(4)(ii), to the extent that this regulation can be enforced against business associates—which, as explained later, is doubtful at best—it only reaches, at most, Ciox's claims under § 164.524(c)(3)(ii) to the extent that Ciox challenges the requirement to "deliver an individual's PHI to third parties *regardless* of whether that information is derived from an [electronic health record.]" Compl. ¶ 63, ECF No. 1. Because § 164.502(a)(3)(ii) only requires disclosure "with respect to an individual's request for an *electronic* copy" (emphasis added), of PHI, it does not implicate Ciox's challenges to (1) § 164.524(c)(3)(ii)'s requirement that covered entities provide non-electronic copies of PHI in response to individual requests in circumstances or (2) the 2016 guidance, which focus on the fees Ciox can charge for its services under 45 C.F.R. § 164.524(c)(4). *See* Compl. ¶¶ 59–77.

[4] To the extent that the Court finds the regulatory definitions for "use" and "disclosure" of PHI to be ambiguous, it should defer to HHS' interpretations. *See Select Specialty Hosp. of Atlanta v. Thompson*, 292 F. Supp. 2d 57, 65 (D.D.C. 2003); *cf. Bocage v. Acton Corp.*, No. 2:17-CV-01201-RDP, 2018 WL 905351, at *5-6 (N.D. Ala. Feb. 15, 2018) (deferring to HHS guidance regarding the construction of 42 U.S.C. § 17935(e)).

business associates *cannot* violate § 164.524, because § 164.524's requirements apply only to covered entities. Even if a business associate could be said to have violated a provision that applies to a covered entity by virtue of its agreement to act as the covered entity's agent, § 160.402 goes on to make clear that "[a] *covered entity* is liable, in accordance with the Federal common law of agency, for a civil money penalty for a violation based on the act or omission of any agent of the covered entity, including a workforce member or business associate, acting within the scope of the agency." 45 C.F.R. § 160.402(c)(1) (emphasis added). Thus, even when a business associate fulfills a covered entity's responsibilities under § 164.524 as an agent, it is the covered entity who may be penalized to the extent that the business associate's actions do not comport with the law's requirements on covered entities, not the business associate.

The letter from HHS that Ciox attaches to its Complaint, in which HHS provides technical assistance to a covered entity about the feel limitations in 45 C.F.R. §164.524, makes this clear. The letter is directed to the covered entity, not to Ciox, because it is the covered entity that is responsible for any fees that were charged to an individual in excess of what is contemplated by 42 U.S.C. §17935(e), as implemented by 45 C.F.R. §164.524. *See* Compl. Ex. B, Davis Letter, ECF No. 1-2. Tellingly, Ciox does not point to any enforcement action actually taken against itself or another business associate for a violation of 45 C.F.R. § 164.524 or 42 U.S.C. § 17935.  Ciox's theory that these provisions are enforceable against business associates is thus lacking in legal or factual support.

Because 42 U.S.C. § 17935(e) and 45 C.F.R. § 164.524 do not directly apply to business associates like Ciox, and HHS cannot enforce those provisions against business associates, Ciox must satisfy a heightened standard to establish Article III standing to pursue its claims, which they

cannot meet, as explained further below. Further, Ciox's claims are generalized and thus unripe, and it lacks statutory standing, for related reasons.

## II. Ciox lacks Article III standing because it fails to satisfy the heightened burden to challenge government action that does not directly affect business associates.

As Defendants explained in their moving brief, Ciox's allegations regarding injury-in-fact, causation, and redressability are conclusory, speculative, and unsubstantiated. Defs.' Mem. 11–17. These allegations do not meet any standard for Article III standing, let alone the heightened standard that applies when a plaintiff challenges regulatory action that does not apply to it. *Id.* Ciox attempts to manufacture Article III standing by (1) invoking the same inapposite legal provisions discussed above and (2) introducing new facts through a declaration, which is still insufficient. As a result, Ciox's claims must be dismissed for lack of standing.

### a. Ciox must meet the heightened burden to prove Article III standing as a third party to the statute and regulation it challenges.

As an initial matter, Ciox must meet a heightened standard to successfully assert Article III standing because it challenges legal and regulatory provisions that do not directly regulate business associates. *E.g.*, *Long Term Care Pharm. All. v. Leavitt*, 530 F. Supp. 2d 173, 180–81 (D.D.C. 2008); *see also, e.g.*, *Bloomberg L.P. v. Commodity Futures Trading Comm'n*, 949 F. Supp. 2d 91, 114-15 (D.D.C. 2013). Any injury that Ciox suffers is caused by the covered entities with which it contracts to fulfill those entities' obligations under the laws at issue. Those contracts set the terms of Ciox's payments for its services performed on behalf of the covered entities, and HHS does not regulate the terms of payment. Ciox tries to draw a link between its asserted injury and HHS' regulations, but its arguments depend both on statutory and regulatory provisions that relate to business associates' separate obligations under HIPAA and on an incorrect reading of HHS' enforcement authority. Therefore, "much more" is needed to properly assert injury than if

Ciox's asserted harm directly resulted from HHS' actions. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992).

    *b.   Ciox fails to meet its heightened standing burden, because it does not assert any cognizable injuries sufficiently causally connected to Defendants' actions.*

    Ciox introduces new facts in its briefing via a declaration in an apparent attempt to amend its Complaint. *See* Pl.'s Mem. 18 n.2. The Court should ignore these new factual allegations; instead, Ciox must amend its Complaint if it wishes to rely on these facts in support of its lawsuit. *See Perkins v. Vance-Cooks*, 886 F. Supp. 2d 22, 29 n.5 (D.D.C. 2012) ("It is settled law in this circuit that a plaintiff may not raise new allegations in this manner.").[5] Regardless, Ciox's newly asserted facts are still insufficient to establish injury-in-fact, causation and redressability for purposes of Article III standing. Ciox's asserted economic injuries are self-inflicted because they flow from the contracts Ciox has negotiated with covered entities and are not fairly traceable to the challenged actions. And Ciox's asserted fear of enforcement is speculative, at best.

    *Economic injury*: Ciox declares that it is losing "well over $10 million per year" as a result of many of the contracts it has negotiated with covered entities. Decl. of Tarun Kabaria ("Kabaria Decl.") ¶ 16, ECF No. 12-2. "Rather than collect a service fee from the covered entity in exchange for fulfilling PHI requests from an individual, an individual's personal representative, or an authorized third-party entity, CIOX's compensation for providing those services under the vast majority of its 13,000 . . . contracts consists solely" of fees received "from the requestor or third-party recipient of requested PHI." *Id.* ¶ 10. Further, "CIOX's [business associate agreements] . . . generally require it to indemnify the covered entity for any violation of HIPAA, HITECH, or the Privacy Rule that CIOX might commit when providing ROI [release of information] services." *Id.*

---

[5] *But see Welborn v. Internal Revenue Serv.*, 218 F. Supp. 3d 64, 79 (D.D.C. 2016), *appeal dismissed*, No. 16-5365, 2017 WL 2373044 (D.C. Cir. Apr. 18, 2017).

¶ 9. Finally, "some of CIOX's covered-entity clients now expressly bar CIOX from charging more than $6.50 for fulfilling a Third Party Directive[.]" *Id.* ¶ 15.

These asserted injuries are self-inflicted; they are a result of Ciox's own choice to enter into contracts with covered entities that (1) do not provide a fixed service fee for providing certain services, (2) include indemnification clauses, and (3) in some cases, contain a flat fee that business associates can charge individuals for providing them with their PHI on behalf of covered entities. "'Self-inflicted harm doesn't satisfy the basic requirements for standing' since it is neither a 'cognizable' injury nor 'fairly traceable to the Defendants' challenged conduct.'" *Libertarian Nat'l Comm., Inc. v. Fed. Election Comm'n*, 228 F. Supp. 3d 19, 24 (D.D.C. 2017) (quoting *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006)).

The D.C. Circuit's decision in *Bhd. of Locomotive Eng'rs. & Trainmen, a Div. of Rail Conf.-Int'l Bhd. of Teamsters v. Surface Transp. Bd.*, 457 F.3d 24 (D.C. Cir. 2006), applies here. There, the court examined an agency's approval of a transfer of train track between two railroad companies, which was challenged by a union representing the selling company's employees. *Id.* at 25. The court found that the agency's decision "means the Union is not entitled to bargain over the effects of the transaction only because the Union agreed to that limitation" in its collective bargaining agreement. *Id.* at 28. Therefore, the court concluded that the union's asserted injury "was not in any meaningful way 'caused' by the [agency]; rather, it was entirely self-inflicted and therefore insufficient to confer standing upon the Union." *Id.* Similarly, here, if Ciox is injured by the specific terms of the contracts it entered into with the covered entities, that injury cannot form the basis of its standing to sue HHS.

Ciox derivatively argues that it will suffer an injury-in-fact by having to negotiate new contracts with covered entities to recoup costs for fulfilling individual requests for PHI on behalf

of covered entities. Pl.'s Mem. 24. But this asserted injury likewise flows from Ciox's original decision to negotiate contracts that did not specify a separate service fee for fulfilling individual requests for PHI on behalf of covered entities.  Any burden that Ciox would incur to correct this decision is thus similarly self-inflicted.[6]

Because Ciox's economic losses result from the contracts negotiated with covered entities, not from HHS' actions, the causal relationship between HHS' actions and Ciox's injuries is too remote for Ciox to meet its heightened standing burden. The court's analysis in *Long Term Care Pharmacy All.*, 530 F. Supp. 2d at 181, is instructive. In that case, causation was lacking where a set of pharmacies that contracted with prescription drug plans ("PDPs") sued the Centers for Medicare and Medicaid ("CMS") for failing to provide information on the eligibility of Medicare and Medicaid beneficiaries, which allegedly caused the PDPs to withhold full reimbursement to the pharmacies for the co-payments for certain prescription drugs. The court concluded that the pharmacies' injury was caused by their contracts with the PDPs, not by any regulatory action: "[t]he . . . pharmacies' rights to reimbursement for the prescriptions that they dispense to institutionalized dual eligibles are governed by their contracts with the PDPs, for the pharmacies have no independent contractual relationship with CMS. It is also clear that CMS does not govern the process by which the PDPs reimburse the . . . pharmacies, and CMS does not require, for

---

[6] Even assuming that the burden of renegotiating its contracts is not self-inflicted, it is still not a cognizable injury. Ciox cites an extra-circuit case that relies solely upon Ninth Circuit case law, *Airline Serv. Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1078 (9th Cir. 2017). This decision is, of course, not binding here. It is also inapposite. There, the plaintiff's members would not simply have to renegotiate a contract; they would have to "participate in negotiations, mediation, and possibly even binding arbitration over a labor peace agreement[.]" *Id.* Further, the causal link between the complained-of injury and the governmental conduct was much closer. In that case, the city "require[d] businesses at the airport to accept certain contractual conditions aimed at preventing service disruptions[,]" *id.* at 1077, whereas here, HHS has not required any changes in the way business associates conduct their business but instead have imposed and clarified requirements upon *covered entities*.

example, that the PDPs only reimburse the pharmacies for the full amount of prescriptions when the CMS data indicates that no co-payment is owed." *Id.* at 180–81. So too here.

Ciox misses the mark in relying on *Tozzi v. United States Dep't of Health & Human Servs.,* 271 F.3d 301 (D.C. Cir. 2001), and *Block v. Meese*, 793 F.2d 1303 (D.C. Cir. 1986). Pl.'s Mem. 23. In both cases, the courts found a sufficiently close relationship between the complained-of government action and the plaintiff's injuries, even though the asserted injury was directly caused by another actor. But both cases involved much closer links between the challenged action and the injury than Ciox can show here.

In *Tozzi*, the court found causation between the complained-of conduct and plaintiff's injuries where HHS had issued a report declaring a particular substance to be a carcinogen, and a manufacturer who manufactured products containing that particular substance sued on the basis of the economic harm that it suffered as a result of the declaration. *Tozzi*, 271 F.3d at 303–04. The court's decision turned upon the nature of HHS' report, which was intended to "serve as the federal government's authoritative statement on the current state of knowledge regarding the carcinogenicity of various chemicals" and "as a resource for state, federal and local regulatory authorities." *Id*. at 309. Therefore, the plaintiff's fears that the report "will cause some non-trivial number of state and local agencies to regulate" the chemical and "some non-trivial number of healthcare companies, already under pressure from environmental activists, to reduce or end their use" of products containing the chemical was non-speculative. *Id.*

Similarly, in *Block*, the court found causation between the Justice Department's classification of three films as "political propaganda" and the asserted economic injuries of distributors of those films. *Block*, 793 F.2d at 1306–07. The court concluded that "[t]he principal

'problem,' obviously, is the political aversion of these public instrumentalities to being identified as distributors of a 'propaganda' film . . . ." *Id.* at 1308.

Here, however, Ciox does not and cannot show that its lost profits are fairly traceable to HHS' rule and guidance regarding the rate that covered entities may charge for fulfilling individual requests for PHI. Nothing in HHS' guidance, rule, or any other provision prohibits  or even discourages business associates from being profitably compensated in fulfilling a covered entity's obligations under the law; the rule and guidance merely indicate that HHS does not wish for *individuals* to have to pay burdensome fees to access their PHI.[7]

*Fear of enforcement*: Defendants explained in their opening brief that Ciox insufficiently pleads an enforcement challenge, Defs.' Mem. 14–15, and Ciox does not meaningfully rebut this argument. To the extent Ciox means to argue that HHS can enforce the challenged provisions against it, Defendants have already explained that this is not the case. *See supra* Sec. I. But even if HHS could theoretically do so, it does not interpret, and has never interpreted, its enforcement authority to permit an action against a business associate for a violation of 45 C.F.R. § 164.524. Ciox's asserted fears that the agency will suddenly change course are conjectural at best. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 (2013) ("[B]ecause § 1881a at most *authorizes—*

---

[7] As for redressability, Ciox merely cursorily argues that "the challenged regulations are hurting CIOX's business right now and removing those regulations would fix the problem." Pl.'s Mem. 25. The Kabaria declaration states that "if this Court were to bar HHS from enforcing" the 2016 guidance or the challenged portions for the 2013 rule, "Ciox would revert to charging [higher rates] for delivering PHI to third parties pursuant to the patient-authoriz[ed] process." Kabaria Decl. ¶ 17. But again, any damage to Ciox's profits is self-inflicted and, thus, "doesn't satisfy the basi[c] requirements for standing." *Hand v. Perez*, No. CV 14-0880 (BAH), 2015 WL 3534162, at *5 (D.D.C. June 5, 2015), *aff'd,* 672 F. App'x 24 (D.C. Cir. 2016) (quoting *Nat'l Family Planning,* 468 F.3d at 831).

Further, Ciox fails to respond at all to Defendants' point that rescission of the 2016 Guidance, which is the subject of two of Ciox's three claims, would not redress any properly-pleaded injury, because the guidance works no change in the law. Defs.' Mem. 17 & n. 3.

but does not *mandate* or *direct*—the surveillance that respondents fear, respondents' allegations are necessarily conjectural.").

Because Ciox fails to establish the requisite elements to assert Article III standing, Ciox's Complaint should be dismissed.

### III.        *Ciox's claims are unripe.*

In their motion to dismiss, Defendants explained that Ciox's claims are unripe, because (1) they are unfit for review and (2) Ciox fails to demonstrate cognizable hardship absent immediate court intervention. *See* Defs.' Mem. 17–20. Ciox offers three arguments in response, none of which is persuasive.

*First*, Ciox argues that Defendants have not specified why its claims would benefit from a more concrete setting. Not so. Defendants explained in detail that, because Ciox challenges the 2016 guidance, and that guidance is not final agency action, a "crucial perquisite" to the fitness prong of the ripeness test is missing. *Id*. at 18 (quoting *Sprint Corp. v. FCC*, 331 F.3d 952, 956 (D.C. Cir. 2003)). Defendants further explained that Ciox's challenge to the 2013 rule would also benefit from a more concrete setting because (1) Ciox has so far only speculated that Defendants' actions place it at risk of an enforcement action, and (2) Ciox's claims are best brought in "the context of a specific application" of the agency's policies, given HIPAA's complexity. Defs.' Mem. 18–19 (quoting *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164 (1967)).

*Second*, Ciox brushes off the complexity of HIPAA's statutory scheme, breezily asserting that "'The statute has a lot of parts!' isn't a legitimate reason to defer review . . . ." Pl.'s Mem. 26. That is not Defendants' point, of course, and the D.C. Circuit has not been as dismissive as Ciox is of the question of fitness: "issues still may not be fit for review where the agency retains considerable discretion to apply the new rule on a case-by-case basis, particularly where there is a complex statutory scheme or there are other difficult legal issues that are implicated by the agency

action." *Sprint Corp.*, 331 F.3d at 956. In such cases, judicial review "is likely to stand on a much surer footing in the context of a specific application of [the] regulation than could be the case in the framework of [a] generalized challenge[.]" *Toilet Goods Ass'n*, 387 U.S. at 163–64. Where Defendants retain discretion to enforce the 2013 rule, the HIPAA administrative simplification provision is complex, and Ciox's fears of enforcement are theoretical, the circumstances weigh in favor of deferring review of this generalized challenge until a specific application of the Rule against business associates can be examined. "It is premature for a court to consider the legality of how the Government *might* wield [its] . . . authority in a *potential* future proceeding." *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 56 (D.C. Cir. 2015).

 *Third*, Ciox argues that (1) it will face hardship if the Court does not immediately review this challenge, and (2) Defendants cite "no significant institutional interest" in deferring review. Pl.'s Mem. 26. But, as Defendants explain above, Ciox's asserted injuries are too causally disconnected and speculative to be cognizable. *Shaffer v. Def. Intelligence Agency*, 601 F. Supp. 2d 16, 23 (D.D.C. 2009) ("[I]f a plaintiff has alleged a 'mere potential for future injury'" or "if there are too many 'ifs' in the asserted causal chain,' then the case is not ripe.") (citing *State Farm Mut. Auto. Ins. Co. v. Dole,* 802 F.2d 474, 480 (D.C. Cir. 1986)). And Defendants' institutional interest in deferring review is apparent: "[t]he agency has an interest in thinking through its policy choices and completing its decisionmaking process before its decision is subjected to judicial review." *Consolidation Coal Co. v. Fed. Mine Safety & Health Review Comm'n*, 824 F.2d 1071, 1080 (D.C. Cir. 1987). Further, "[e]ven when the agency's decisionmaking process is complete, the court has an independent interest in postponing review until the agency's decision has actually been applied to the party seeking review, so that the issues are clearly presented in a fully developed factual context." *Id.*

## IV.     *Ciox lacks statutory standing.*

Ciox also lacks statutory standing to bring its claims. Ciox, again, relies on a string of inapposite statutory and regulatory provisions that do not actually impose any relevant, enforceable legal duties on business associates. *See* Pl.'s Mem. 27–29; *see also supra* Sec. I. Ciox may be regulated generally by HIPAA's administrative simplification provisions and specifically by certain provisions not challenged here. But that is not enough to create statutory standing for this challenge. *See Calumet Indus., Inc. v. Brock*, 807 F.2d 225, 228–29 (D.C. Cir. 1986) ("To be sure, petitioners are regulated by the OSH Act . . . . But petitioners are concededly *not* regulated by the agency action they challenge . . . . We have held that to have standing under the 'regulated interests' leg [of the statutory standing analysis], it is not enough that petitioners be regulated merely by the statute upon which the agency action is based." (citation omitted)).

Ciox does not save its claim to statutory standing by alleging that the provisions it challenges indirectly affect its bottom line. *See Tax Analysts & Advocates v. Blumenthal*, 566 F.2d 130, 144 (D.C. Cir. 1977), *cert. denied*, 434 U.S. 1086 (1978) ("We cannot define the zone of interests as being the equivalent in every case of the 'zone of impact' or the 'zone of consequences.' To do so would establish a standing doctrine based solely on the existence of harm to a party; it is clear that . . . such a result is unacceptable as contrary to the stated purposes of the doctrine." (footnote omitted)).[8]

---

[8] Moreover, because "the zone-of-interests test may only be satisfied by an extant Article III injury," Ciox's asserted injuries from the rule and guidance it challenges are not cognizable in the statutory standing context. *Am. Inst. of Certified Pub. Accountants v. Internal Revenue Serv.*, 199 F. Supp. 3d 55, 64 (D.D.C. 2016) (citing *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996)).

Because Ciox does not show that "a legislatively conferred cause of action encompasses" its claims, *Mendoza v. Perez*, 754 F.3d 1002, 1016 (D.C. Cir. 2014) (citation omitted), its claims must be dismissed for lack of statutory standing.

## V.     *The 2016 Guidance does not amount to final agency action.*

Finally, Ciox challenges guidance that is not final agency action and thus is not subject to APA review; it is nonbinding and explanatory. Defs.' Mem. 23–28. Ciox's arguments to the contrary all miss their mark.[9]

First, Ciox argues that the guidance lacks "*either* a general disclaimer of intent to regulate *or* a specific disclaimer that any of the challenged provisions do so," which somehow transforms the guidance into a document with the force of law. Pl.'s Mem. 35. But just as general disclaimers can be disregarded as "boilerplate[,]" *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir. 2000), the *lack* of a general disclaimer cannot convert a guidance document into binding law where other indicia of its nonbinding nature are evident, *see Indep. Equip. Dealers Ass'n v. E.P.A.*, 372 F.3d 420, 427 (D.C. Cir. 2004) (using "common sense, basic precepts of administrative law, and the Administrative Procedure Act itself" to decide whether a guidance document amounted to final agency action). Here, as Defendants explained in its opening brief, the specific language and context of the guidance reveals that none of its three challenged portions amounts to the consummation of the agency's decisionmaking process and an action by which a party's rights or obligations have been determined, either in form or in substance. *See* Defs.' Mem. 23–28. Therefore, the guidance is not final agency action. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

---

[9] Ciox argues that the 2016 guidance is not only final agency action but also a legislative rule, thus subject to both judicial review *and* notice and comment procedures under the APA. Defendants limit their response to whether the guidance is final agency action and reserve their merits arguments for later briefing on summary judgment. *See* Defs.' Mot. to Stay, ECF No. 14.

Ciox appears to recognize this point, as it proceeds to attack each relevant portion of the guidance. The first portion of the challenged guidance notes that the 2013 rule's fee limitation on individual requests for PHI, 45 C.F.R. § 164.524(c)(4), applies to individual requests directing PHI to be sent to a third party, in accordance with 45 C.F.R. §164.524(c)(3)(ii). Ciox argues that this guidance is "an unqualified countermand" and also "expressly forbid[s] regulated parties from trying to evade the fee limitations imposed by this new directive[s.]" Pl.'s Mem. 35–36. But the guidance does *not* issue a new directive or rescind an old one; it merely explains what the regulation *already* directs. That particular guidance was issued as an answer to the question, "When do the HIPAA Privacy Rule limitations on fees that can be charged for individuals to access copies of their PHI apply to disclosures of the individual's PHI to a third party?" HHS, Health Information Privacy, *Individuals' Right under HIPAA to Access their Health Information 45 C.F.R. § 164.524* ("Guidance") at 16 (July 1, 2016), Ex. A, ECF No. 1-1. It is replete with citations back to the regulation. *Id.* Most importantly, the guidance itself merely expounds on § 164.524's requirements in its observation that the regulation's fee limitation for individual PHI requests continues to apply when an individual's request directs for a third party to receive the information. *Id.*; *see also* 45 C.F.R. § 164.524(c)(3)(ii), (c)(4). All of this indicates that the guidance was issued to explain the regulation, not to extend or amend it. Such an explanation cannot amount to final agency action subject to APA review. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 713 (D.C. Cir. 2015) (discussing that no final agency action where the challenged document did "not purport to amend any FAA regulation" and did "not otherwise carry the force of law").

The next portion of the challenged guidance explains the 2013 rule's definition of "labor for copying[,]" which is the labor costs for which covered entities may charge a reasonable fee in

accordance with 45 C.F.R. § 164.524(c)(4)(i). Ciox argues that this explanation runs counter to the 2013 rule's preamble, thus imposing a new, binding obligation on covered entities. Pl.'s Mem. 37–38. Ciox is mistaken. As HHS explained, the preamble's language is consistent with the guidance. *See* Defs.' Mem. 26 n.8. The preamble notes that "labor costs included in a reasonable cost-based fee could include skilled technical staff time spent to create and copy the electronic file, such as compiling, extracting, scanning and burning protected health information to media, and distributing the media." 78 Fed. Reg. at 5636. The guidance, meanwhile, notes that labor for copying is limited to labor for "creating and delivering the electronic or paper copy in the form and format requested or agreed upon by the individual." Guidance 10. Labor for "creating" the copy of the PHI would appear to include labor for "compiling, extracting, scanning and burning protected health information to media," and "delivering" would appear to encompass "distributing" the media.

Moreover, to the extent that Ciox now challenges the guidance's statement that "it has always been prohibited to pass on to an individual labor costs related to search and retrieval," that language is entirely consistent with the preamble language, as well as the regulation's limitation on fees to "labor for copying." Guidance 10; *see also* 45 C.F.R. § 164.524(c)(4)(i). The preamble specifically notes that "a covered entity may *not* charge a retrieval fee," it and does not state that costs for search are included in the definition of labor for copying. 78 Fed. Reg. at 5636 (emphasis added). Therefore, Ciox's attempt to transform the guidance's explanatory language into a new edict must fail.

Finally, the last challenged portion of the guidance is nonbinding; it merely provides three examples of how a covered entity can calculate reasonable, cost-based fees for providing PHI in response to individual requests. *See* Guidance 12–13. Ciox argues that these three examples "allow

17

CIOX to choose only from these three methods and expressly bar CIOX from charging the traditional state-authorized rates it would prefer." Pl.'s Mem. 39; *see also id.* (citing *General Elec. v. EPA*, 290 F.3d 377, 384 (D.C. Cir. 2002)). The guidance, however, nowhere limits covered entities to the three options it provides; as Defendants previously explained, it merely provides three ways in which the fees "may" be calculated, and does not even state that the three options provided must be followed in ordinary cases. Defs.' Mem. 25–26. This fact renders Ciox's citation to *General Electric* inapposite. In that case, the EPA imposed various risk-assessment requirements on applicants seeking to use an alternative method to dispose of certain types of waste. *Gen. Elec.*, 290 F.3d at 379. The guidance "require[d] [applicants] to conform to one or the other" option for calculating risk, "that is, not to submit an application based upon a third way. And if an applicant does choose to calculate cancer and non-cancer risks separately, then it must consider the non-cancer risks specified in the Guidance Document" *Id.* at 384. Here, no such requirements are imposed, beyond the requirements contained in the regulation itself.

Further, the guidance does not "expressly bar CIOX from charging the . . . rates it would prefer," as Ciox would have it. Pl.'s Mem. 39. Rather, as we have noted, Ciox is free to negotiate its payments with the covered entity with whom it contracts. Additionally, the guidance specifically explains that covered entities *can* charge "[s]tate fee schedules" to individuals when providing them with a copy of their PHI under HIPAA "where the State authorized costs are the same types of costs permitted under 45 C.F.R. [§] 164.524(c)(4) . . . and are reasonable." Guidance 15. To the extent that Ciox is challenging the guidance for failing to allow Ciox to charge costs *in excess of* the fee limitations in the 2013 rule, its challenge is plainly illogical.

Because none of the challenged portions of the 2016 guidance amount to the consummation of the agency's decisionmaking process or an action by which a party's rights or obligations have

been determined, the guidance is not final agency action subject to APA review. *Bennett*, 520 U.S. at 177–78. Ciox's challenges to the guidance must be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, and for the reasons contained in Defendants' opening brief, Ciox's claims should be dismissed.


Dated: May 14, 2018                                        Respectfully submitted,

                                                          CHAD A. READLER
                                                          Acting Assistant Attorney General

                                                          JESSIE K. LIU
                                                          United States Attorney

                                                          JOEL McELVAIN
                                                          Assistant Director

                                                          /s/ *Vinita B. Andrapalliyal*
                                                          Vinita B. Andrapalliyal
                                                          Trial Attorney
                                                          United States Department of Justice
                                                          Civil Division
                                                          Federal Programs Branch
                                                          P.O. Box 883
                                                          Washington, DC 20044
                                                          Tel: (202) 305-0845
                                                          vinita.b.andrapalliyal@usdoj.gov

                                                          *Counsel for HHS*