UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

CIOX HEALTH, LLC,                          )
                                           )
            Plaintiff,                     )
                                           )
v.                                         )        Case No. 1:18-cv-00040 (APM)
                                           )
ALEX M. AZAR II, Secretary of Health       )
and Human Services, *et al.*,              )
                                           )
            Defendants.                    )
                                           )

**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND CROSS-MOTION
FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATUTORY AND REGULATORY BACKGROUND .................................................... 3

   A.   HIPAA and 2001 regulations ..................................................................................... 3

   B.   HITECH Act ................................................................................................................ 6

   C.   2013 rule ..................................................................................................................... 7

   D.   2016 guidance ........................................................................................................... 10

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................... 11

LEGAL STANDARDS ..................................................................................................... 13

ARGUMENT ..................................................................................................................... 14

   A.   The 2013 Rule is lawful. ........................................................................................... 15

       a.   HHS had statutory authority to promulgate the 2013 rule. ................................... 15

          i.   Under Chevron step one, section 264 of HIPAA unambiguously vests HHS with authority to modify its health information privacy standards. .............. 15

          ii.   Alternatively, the Court should defer to HHS's interpretation of the statute under Chevron step two. ................................................................................. 18

       b.   2013 rule is not arbitrary and capricious. .............................................................. 24

   B.   The 2016 guidance is not subject to notice and comment. ................................... 25

   C.   The 2016 guidance is reasonable and consistent with the HITECH Act and the 2013 Rule. ................................................................................................................... 29

       a.   The guidance's description of how covered entities are to treat individual requests that covered entities send a copy of the individual's PHI to a third party does not conflict with the HITECH Act and is reasonable. ................................. 30

       b.   The guidance's explanation of which labor costs are to be counted in determining a reasonable, cost-based fee merely explains the 2013 rule and is procedurally and substantively valid. ................................................................................................. 31

       c.   The guidance's suggestions on how to calculate a reasonable, cost-based fee do not exceed HHS's authority and offer plausible options for covered entities to calculate their costs. ..................................................................................................... 33

CONCLUSION................................................................................................................... 34

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Air Transport Ass'n of Amer., Inc. v. U.S. Dep't of Agric.*,
   303 F. Supp 3d 28 (D.D.C. 2018) ............................................................ 21

*Am. Bioscience, Inc. v. Thompson*,
   269 F.3d 1077 (D.C. Cir. 2001) ............................................................. 14

*Am. Mining Cong. v. Mine Safety & Health Admin.*,
   995 F.2d 1106 (D.C. Cir. 1993) ............................................................. 30

Am. Petroleum Inst. v. EPA,
   52 F.3d 1113 (D.C. Cir. 1995) ............................................................... 22

*Am. Power & Light Co. v. S.E.C.*,
   329 U.S. 90 (1946) ................................................................................. 24

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ......................................................................... 16, 18

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ............................................................................... 26

*Citizens for Responsibility & Ethics in Wash. v. FEC*,
   2018 U.S. Dist. LEXIS 130774 (2018) ................................................. 17

*Citizens to Preserve Overton Park v. Volpe*,
   401 U.S. 402 (1971) ............................................................................... 33

*Cmty. Nutrition Inst. v. Young*,
   818 F.2d 943 (D.C. Cir. 1987) ............................................................... 26

*Costanzo v. Tillinghast*,
   287 U.S. 341 (1932) ............................................................................... 20

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*,
   452 F.3d 798 (D.C. Cir. 2006) ............................................................... 27

*Ctr. for Food Safety v. Salazar*,
   898 F. Supp. 2d 130 (D.D.C. 2012) ...................................................... 14

*Dep't of Treasury v. Fed. Labor Relations Auth.*,
   494 U.S. 922 (1990) ............................................................................... 19

*Detroit Int'l Bridge Co. v. Gov't of Canada*,
   883 F.3d 895 (D.C. Cir. 2018) ............................................................... 24

*FDA v. Brown & Williamson Tobacco Corp.*,
 529 U.S. 120 (2000) ............................................................................................ 17

*Five Flags Pipe Line Co. v. Dep't of Transp.*,
 854 F.2d 1438 (D.C. Cir. 1988) ........................................................................... 22

*Fla. Power & Light Co. v. Lorion*,
 470 U.S. 729 (1985) ............................................................................................ 14

*Fox Television Stations, Inc. v. Filmon X LLC*,
 150 F. Supp. 3d 1 (D.D.C. 2015) ......................................................................... 20

*Gen. Elec. Co. v. E.P.A.*,
 290 F.3d 377 (D.C. Cir. 2002) ............................................................................. 29

*Guardians Ass'n v. Civil Serv. Comm'n*,
 463 U.S. 582 (1983) ...................................................................................... 20, 21

*Haig v. Agee*,
 453 U.S. 280 (1981) ............................................................................................ 20

*Helicopter Ass'n Int'l Inc. v. FAA*,
 722 F.3d 430 (D.C. Cir. 2013) ............................................................................. 23

*In re Polar Bear Endangered Species Act Listing & Section 4(d) Rule Litig.*,
 709 F.3d 1 (D.C. Cir. 2013) ................................................................................. 14

*Koretoff v. Vilsack*,
 614 F.3d 532 (D.C. Cir. 2010) ............................................................................. 13

*Mobile Commc'ns Corp. of Am. v. F.C.C.*,
 77 F.3d 1399 (D.C. Cir. 1996) ............................................................................. 17

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983) ........................................................................... 14, 20, 25, 33

*Nat'l Mining Ass'n v. McCarthy*,
 758 F.3d 243 (D.C. Cir. 2014) ....................................................................... 26, 28

*Northpoint Tech. v. FCC*,
 414 F.3d 61 (D.C. Cir. 2005) ............................................................................... 18

*Pac. Gas & Elec. Co. v. Fed. Power Comm'n*,
 506 F.2d 33 (D.C. Cir. 1974) ......................................................................... 25, 26

*Pauley v. Beth Energy Mines*,
 501 U.S. 680 (1991) ............................................................................................ 19

*Perez v. Mortg. Bankers Ass'n*,
   135 S.Ct. 1199 (2015) ................................................................. 30

*Revock v. Cowpet Bay W. Condo. Assoc.*,
   853 F. 3d 96 (3d Cir. 2017) .......................................................... 22

*Rothe Dev., Inc. v. Dep't of Def.*,
   107 F. Supp. 3d 183 (D.D.C. 2015) ............................................. 23

*Rust v. Sullivan*,
   500 U.S. 173 (1991) ...................................................................... 18

*S.C. Med. Ass'n v. Thompson*,
   327 F.3d 346 (4th Cir. 2003) ......................................... 4, 16, 23, 24

*Shalala v. Guernsey Mem'l Hosp.*,
   514 U.S. 87 (1995) ........................................................................ 30

*Sherley v. Sebelius*,
   644 F.3d 388 (D.C. Cir. 2011) ......................................... 16, 18, 19

*Sullivan v. Everhart*,
   494 U.S. 83 (1990) ........................................................................ 19

*Syncor Int'l Corp. v. Shalala*,
   127 F.3d 90 (D.C. Cir. 1997) ....................................................... 26

*Troy Corp. v. Browner*,
   120 F.3d 277 (D.C. Cir. 1997) ..................................................... 31

*United States v. Haggar Apparel Co.*,
   526 U.S. 380 (1999) ...................................................................... 19

*United States v. Welden*,
   377 U.S. 95, (1964) ....................................................................... 22

*United States v. Wilson*,
   290 F.3d 347 (D.C. Cir. 2002) ..................................................... 19

*Vill. of Barrington v. Surface Transp. Bd.*,
   636 F.3d 650 (D.C. Cir. 2011) ..................................................... 31

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ...................................................................... 23

## **Statutes**

1 U.S.C. § 204 ....................................................................................... 22

5 U.S.C. § 702.................................................................................................................13

5 U.S.C. § 706(2)(A)...................................................................................................... 14

5 U.S.C. § 706(2)(C)...................................................................................................... 14

5 U.S.C. § 553(b) ..................................................................................................... 25, 26

5 U.S.C. § 553(c) .............................................................................................................25

42 U.S.C. § 1320d ............................................................................................................ 4

42 U.S.C. § 1320d(6) ....................................................................................................... 4

42 U.S.C. § 1320d-3(b)(1) ............................................................................................ 17

42 U.S.C. § 17921(5) ....................................................................................................... 6

42 U.S.C. § 17935(e) ..................................................................................................... 27

42 U.S.C. § 17935(e)(1) ........................................................................................ 6, 9, 27

42 U.S.C. § 17935(e)(2) ................................................................................................... 9

42 U.S.C. § 17935(e)(3) ...................................................................................... 7, 28, 31

42 U.S.C. § 17951 ................................................................................................... passim

42 U.S.C.A. § 1320d–1(b) ............................................................................................ 24

Health Information Portability and Accountability Act ("HIPAA"),
    Pub. L. No. 104–191, 110 Stat. 1936 (1996) ..................................................... passim

Health Information Technology for Economic and Clinical Health Act ("HITECH Act"),
    Pub. L. No. 111-5, 123 Stat. 115 (2009) ........................................................... passim

**Regulations**

45 C.F.R. § 160.103 ................................................................................................ passim

45 C.F.R. § 160.104 ................................................................................................ 16, 19

45 C.F.R. § 160.104(a) ..................................................................................................... 5

45 C.F.R. § 164.501 .......................................................................................................... 5

45 C.F.R. § 164.524 ................................................................................................ passim

45 C.F.R. § 164.524(c)(2)(i) ............................................................................................8

45 C.F.R. § 164.524(c)(2)(ii)..................................................................................8, 16

45 C.F.R. § 164.524(c)(3)............................................................................................17

45 C.F.R. § 164.524(c)(3)(ii).........................................................................9, 28, 31

45 C.F.R. § 164.524(c)(4).......................................................................................28, 31

45 C.F.R. § 164.524(c)(4)(i).........................................................................9, 29, 32

*Standards for Privacy of Individually Identifiable Health Information*,
    65 Fed. Reg. 82,462-01 (Dec. 28, 2000)........................................................ 4, 5, 27

*Standards for Privacy of Individually Identifiable Health Information*,
    67 Fed. Reg. 53,182 (2002) ..................................................................... 5, 20

*Modifications to the HIPAA Final Rules—Final Rule,*
    78 Fed. Reg. 5566 (Jan. 25, 2013) .......................................................... passim

## Other Authorities

142 Cong. Rec. H 9473 (daily ed. July 31, 1996)..........................................................17

H.R. Rep. No. 111-16 (2009) (Conf. Rep.), (2009 U.S.C.C.A.N. 3)............................... 20, 21, 28

## INTRODUCTION

Ciox, a specialized medical-records provider, brings claims under the Administrative Procedure Act ("APA") to challenge (1) portions of a 2013 rule that the Secretary of the U.S. Department of Health and Human Services ("HHS") promulgated pursuant to section 264(c) of the Health Information Portability and Accountability Act ("HIPAA"), which modified the existing regulations ("the Privacy Rule"); and (2) HHS's 2016 guidance about that rule and its application in various contexts. The challenged portions of the rule and guidance address an individual's statutory right to access her protected health information ("PHI"), as well as the corresponding obligation of "covered entities"—such as doctors, hospitals, and health insurance companies—to provide an individual, upon request and at reasonable cost, a copy of her PHI.[1]

Ciox first claims that the challenged portions of the 2013 rule are *ultra vires* and that the Secretary's statutory rulemaking authority under section 264(c) of HIPAA had ceased to exist either (1) after the Secretary had promulgated the original rules, (2) four years after the enactment of HIPAA, or (3) when the Health Information Technology for Economic and Clinical Health Act ("HITECH Act") was enacted in 2009. As Ciox sees it, the broad rulemaking authority provided to the Secretary in HIPAA somehow vanished *sub silencio* after any one of those three events occurred; that is, the Secretary lacked initial authority to modify the Privacy Rule at all unless Congress specifically directed the Secretary to do so and spelled out the specific modifications the Secretary was to make. Ciox's *ultra vires* claim is baseless. Nowhere

---

[1] Defendant's motion to dismiss all three of Ciox's claims is fully briefed and pending before this Court. *See* Def.'s Mot. to Dismiss, ECF No. 9-1. As Defendants have shown, this Court should dismiss the case, for multiple reasons: Ciox lacks Article III standing to pursue its claims, Ciox is not a "covered entity" regulated by the 2013 rule or otherwise injured by the guidance, its claims are unripe, and the 2016 guidance is not final agency action subject to judicial review under the APA. *See id.* Only if any of Ciox's claims survives Defendants' motion to dismiss should the Court adjudicate those claims on summary judgment.

in HIPAA or in HITECH Act did Congress demonstrate an intent to strip the Secretary of the authority to modify the Privacy Rule. Congress did mandate certain regulatory changes to that Rule to comply with HITECH while leaving the Secretary's rulemaking authority under section 264(c) intact and allowing him to continue to maintain those portions of the Privacy Rule as to which Congress had mandated no changes. The fact that Congress did not *mandate* any changes to the latter is a far cry from Congress precluding the Secretary from modifying those portions of the Privacy Rule that remained extant or requiring that the early HIPAA rules must remain in place in perpetuity or at least until Congress enacts legislation that mandates specific modifications. That argument is unsupported by statutory language, legislative history, or common sense.

Under Ciox's (conflicting) interpretations of section 264, the Secretary would be unable to take action to adapt to the rapidly changing reality of the health care industry and specifically to changes in health care providers' practices regarding the maintenance and transmission of PHI. The Secretary would also have to ignore experience he gained as to how the regulation functioned in practice and do nothing to improve the Privacy Rule to better achieve Congress's goal in enacting HIPAA. Ciox's *ultra vires* argument therefore fails.

Ciox also claims that the guidance that HHS issued in 2016 concerning the challenged 2013 regulation is invalid because the Secretary did not follow notice-and-comment rulemaking procedures that are inapplicable to the guidance it challenges. That guidance does not go beyond any statute or the 2013 rule that Ciox challenges and creates no substantive requirements beyond those already required by stature or by the 2013 rule.

The guidance simply describes how the agency interprets the 2013 rule and gives examples of how the rule applies in various contexts. The guidance also provides advice on

permissible, but not required, ways to comply with certain aspects of the 2013 rule (*e.g.*, potential ways for a covered entity to calculate a reasonable fee for providing PHI in response to a patient's request). Because the challenged guidance is not subject to procedural rulemaking requirements, Ciox's claim fails.

Lastly, Ciox asserts that the guidance is *ultra vires* because it conflicts with the 2013 rule and is arbitrary and capricious. But a fair reading of the 2013 rule reveals that the challenged guidance is consistent with the regulation and is reasonable.

For these reasons, as explained more fully below, to the extent that Ciox's claims survive Defendant's pending Rule 12 motion, the Court should grant summary judgment in favor of Defendants.

## STATUTORY AND REGULATORY BACKGROUND

### A. *HIPAA and 2001 regulations*

Congress enacted HIPAA in 1996 in part to "improve portability and continuity of health insurance coverage in the group and individual markets," to "improve access to long-term care services and coverage," and to "simplify the administration of health insurance." HIPAA, Pub. L. No. 104–191, 110 Stat. 1936 (1996). Part C of HIPAA contains "administrative simplification provisions" to encourage "the development of a health information system through the establishment of standards and requirements for the electronic transmission of certain health information." *Id.* § 261.

Section 264(a) of Part C of HIPAA required the Secretary of HHS to submit "detailed recommendations on standards with respect to the privacy of individually identifiable health

information"[2] within 12 months of HIPAA's enactment. "If legislation governing standards with respect to the privacy of individually identifiable health information transmitted . . . is not enacted by the date that is 36 months after" HIPAA's enactment, the statute directed the Secretary to "promulgate final regulations containing such standards not later than the date that is 42 months after the date of the enactment of this Act." *Id.* § 264(c)(1); *see also S.C. Med. Ass'n v. Thompson*, 327 F.3d 346, 348 (4th Cir. 2003) (describing the "two-step process to address the need to afford certain protections to the privacy of health information maintained under HIPAA"). Specifically, the statute required HHS's regulations to address at least: (1) "[t]he rights that an individual who is a subject of individually identifiable health information should have"; (2) "[t]he procedures that should be established for the exercise of such rights;" and (3) "[t]he uses and disclosures of such information that should be authorized or required." HIPAA, § 264(b); *see also id.* § 264(c)(1). The statute also set forth general requirements for the adoption of standards under Part C. *Id.* § 1171, 42 U.S.C. § 1320d.

Because Congress did not act within three years of HIPAA's enactment, HHS promulgated the Privacy Rule in 2001 pursuant to statutory authority and the parameters set forth in HIPAA.[3] *Standards for Privacy of Individually Identifiable Health Information*, 65 Fed. Reg.

---

[2] Congress defined "individually identifiable health information" as "any information . . . collected from an individual" that "(A) is created or received by a health care provider, health plan, employer, or health care clearinghouse;" and "(B) relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual" and "(i) identifies the individual" or "(ii) with respect to which there is a reasonable basis to believe that the information can be used to identify the individual." 42 U.S.C. § 1320d(6).

[3] Although the original regulations were enacted more than 42 months after HIPAA's enactment HHS's delay did not deprive the agency of the power to act. *See* ECF No. 9-1, at 4 n.1.

82,462-01 (Dec. 28, 2000) (codified at 45 C.F.R. pts. 160 and 164); *see also S.C. Med. Ass'n*, 327 F.3d at 349. The Privacy Rule included a procedure for the Secretary to modify the Rule if the Secretary determined a modification was appropriate not more than once every 12 months. *See* 45 C.F.R. § 160.104(a).[4] The modification provisions accord with Section 1176(b) of HIPAA, in which Congress specified the procedures to be followed "[i]f the Secretary adopts a modification to a standard or implementation specification under this *part. . . .*" HIPAA, Pub. L. No. 104–191, §1175(b)(2), 110 Stat. 1936, 2028 (1996) (emphasis added). The modification provisions also parallel Section 262 of HIPAA regarding similar standards to enable the electronic exchange of health information, in which the Secretary was directed to "review the standards [HHS] adopted" regarding the electronic exchange of health information, and to "adopt modifications to the standards (including additions to the standards), as determined appropriate, but not more frequently than once every 12 months." HIPAA §1174(b)(1).

The Privacy Rule also included a provision titled "Access of individuals to protected health information," 45 C.F.R. § 164.524, which is the primary regulation at issue in this case. 65 Fed. Reg. at 82,554. Section 164.524 sets forth an individual's right to access his or her "protected health information"[5] as contained in a "designated record set";[6] the narrow instances

---

[4] The Secretary modified the Privacy Rule in 2002, in accordance with these modification provisions. *See* Standards for Privacy of Individually Identifiable Health Information, 67 Fed. Reg. 53,182 (2002).

[5] "Protected health information [is generally defined as] individually identifiable health information" that is "(i) [t]ransmitted by electronic media; (ii) [m]aintained in electronic media; or (iii) [t]ransmitted or maintained in any other form or medium." 45 C.F.R. § 160.103.

[6] A "designated record set" is defined as a "group of records maintained by or for a covered entity that is:" (i) "[t]he medical records and billing records about individuals maintained by or for a covered health care provider;" (ii) [t]he enrollment, payment, claims adjudication, and case or medical management record systems maintained by or for a health plan;" or (iii) "[u]sed, in whole or in part, by or for the covered entity to make decisions about individuals." 45 C.F.R.

in which a "covered entity" may deny access; the requirements for the form, time, and manner of

PHI production; and the types of costs that can be charged to the individual for the production.

45 C.F.R. § 164.524. Covered entities are defined as health plans, health care clearinghouses,

and health providers that "transmits any health information in electronic form in connection with

a transaction covered by this subchapter." *Id*. § 160.103. Business associates, which are defined

as a person who "creates, receives, maintains, or transmits protected health information for a

function or activity regulated" by HIPAA "[o]n behalf of [a] covered entity," *id.*, are not

regulated by section 164.524. *See id*. § 164.524.

    *B. HITECH Act*

    In 2009, Congress enacted the HITECH Act,[7] which amended HIPAA and was designed

to promote the "development of a nationwide health information technology infrastructure that

allows for the electronic use and exchange of information. . . ." HITECH Act, § 3001(b). Subtitle

D deals with the privacy of health information and directs HHS to apply 45 C.F.R. § 164.524

such that "in the case that a [healthcare provider] uses or maintains an electronic health record

[or "EHR"][8] with respect to [PHI] of an individual . . . the individual shall have a right to obtain

from such [healthcare provider] a copy of such information in an electronic format and, if the

individual chooses, to direct the [provider] to transmit such copy directly to an entity or person

---

§ 164.501 "For purposes of this paragraph, the term record means any item, collection, or grouping of information that includes protected health information and is maintained, collected, used, or disseminated by or for a covered entity." *Id.*

[7] The HITECH Act was enacted as Subdivision XIII of the American Recovery and Reinvestment Act of 2009. Pub. L. No. 111-5, §3001, 123 Stat. 115, 230–35.

[8] Congress defined an EHR as "an electronic record of health-related information on an individual that is created, gathered, managed, and consulted by authorized health care clinicians and staff." 42 U.S.C. § 17921(5).

designated by the individual . . . ." 42 U.S.C. § 17935(e)(1). Further, "any fee that the covered entity may impose for providing . . . [a] copy . . . if such copy . . . is in electronic form shall not be greater than the entity's labor costs in responding to the request for the copy. . . ." [9] *Id.* § 17935(e)(3).

The HITECH Act further affirmed that "[t]he standards governing the privacy and security of individually identifiable health information promulgated by the Secretary under sections 262(a) and 264" of HIPAA "shall remain in effect to the extent that they are consistent with this subtitle" and directed the Secretary to "amend such Federal regulations as required to make such regulations consistent with this subtitle." HITECH Act § 13421, 42 U.S.C. § 17951. Moreover, the Act stated that "[t]his title may not be construed as having any effect on the authorities of the Secretary under HIPAA privacy and security law," defined to include "section 264 of the [HIPAA]" and "regulations under [that] provision[]." HITECH Act § 3009(a).

*C.  2013 rule*

HHS modified the Privacy Rule again in 2013, partly in response to the HITECH Act. Modifications to the HIPAA Privacy, Security, Enforcement, and Breach Notification Rules under the [HITECH] Act and the Genetic Information Nondiscrimination Act; Other Modifications to the HIPAA Rules—Final Rule ("the 2013 Rule"), 78 Fed. Reg. 5566 (Jan. 25, 2013) (AR000002). It did so pursuant to the HITECH Act and "its general authority under HIPAA." 78 Fed. Reg. 5566 (AR000002). In particular, the 2013 rule made a number of changes "to increase workability and flexibility, decrease burden, and better harmonize the requirements with those under other Departmental regulations." *Id.* Plaintiff's challenge in this

---

[9] Ciox does not challenge 42 U.S.C. § 17935(e)(2), which permits business associates of covered entities to provide an individual with a copy of her PHI when the individual contacts the business associate directly. *Id.*

case concerns modifications to 45 C.F.R. § 164.524, which regulates an individual's access to his or her PHI. *See id.*

Three modifications to 45 C.F.R. § 164.524 bear on this case. *First*, the regulation states that "[t]he covered entity must provide the individual with access to the [PHI] in the form and format requested by the individual, if it is readily producible in such form and format; or, if not, in a readable hard copy form or such other form and format as agreed to by the covered entity and the individual." *Id.* § 164.524(c)(2)(i). However,

> if the [PHI] that is the subject of a request for access is maintained in one or more designated record sets electronically and if the individual requests an electronic copy of such information, the covered entity must provide the individual with access to the [PHI] in the electronic form and format requested by the individual, if it is readily producible in such form and format; or, if not, in a readable electronic form and format as agreed to by the covered entity and the individual.

*Id.* § 164.524(c)(2)(ii).

In making this modification, HHS acknowledged that section 13405(e) of the HITECH Act "applies by its terms only to protected health information in EHRs." 78 Fed. Reg. 5631 (AR000067). HHS determined that "incorporating these new provisions in such a limited manner in the Privacy Rule could result in a complex set of disparate requirements for access to protected health information in EHR systems versus other types of electronic records systems." *Id.* This was partly because under the Privacy Rule, "individuals have a right to review or obtain copies of their [PHI] to the extent such information is maintained in the designated record set(s) of a covered entity." Indeed, EHRs vary in design and capabilities and may not contain all of the PHI in a designated record set.  For example, a physician may receive laboratory results or x-rays electronically from another provider but the results are not uploaded into the individual's EHR due to interoperability issues between the systems. Limiting the right to PHI in the EHR would thus result in the individual receiving an incomplete electronic record. *Id.* To avoid the

incongruities, HHS used "its authority under section 264(c) of HIPAA" to strengthen individuals' right of access with "respect to their individually identifiable health information" to ensure "more uniform[]" treatment of "all [PHI] maintained in one or more designated record sets electronically, regardless of whether the designated record set is an EHR." *Id.*

*Second*, the 2013 rule states that "[i]f an individual's request for access directs the covered entity to transmit the copy of [PHI] directly to another person designated by the individual, the covered entity must provide the copy" to that person. 45 C.F.R. § 164.524(c)(3)(ii). This modification was based in part "on section 13405(e)(1) of the HITECH Act," 78 Fed. Reg. 5634 (AR000070), which provides that an individual has the right to direct a covered entity to transmit an electronic copy of PHI contained in an EHR to an entity or person designated by the individual, 42 U.S.C. § 17935(e)(1). The modification was also based on HHS's "authority under section 264(c) of HIPAA," (AR000067), to the extent that the rule "appl[ies] without regard to whether the protected health information is in electronic or paper form." 78 Fed. Reg. 5634 (AR000070). HHS determined that the rule should apply to PHI in paper form to preserve consistency with HHS's prior rule, *see* 78 Fed. Reg. 5634 (AR000070); the Privacy Rule had previously required a covered entity to "mail the copy of protected health information to an alternative address requested by the individual," *see* 78 Fed. Reg. at 5634 (AR000070) regardless of whether the PHI was in paper or electronic form.

*Third*, in response to section 13405(e)(3) of the HITECH Act, 42 U.S.C. § 17935(e)(2), the 2013 rule states that part of the "reasonable, cost-based fee" that a covered entity may charge for complying with the individual's request for his or her PHI can now include the cost of "labor for copying the protected health information requested by the individual, whether in paper or electronic form. . . ." 78 Fed. Reg. 5635–36 (AR000071–72); *see also* 45 C.F.R.

§ 164.524(c)(4)(i). In the preamble to the 2013 rule, HHS also "clarif[ied] that labor costs

included in a reasonable cost-based fee could include skilled technical staff time spent to create

and copy the electronic file, such as compiling, extracting, scanning and burning protected health

information to media, and distributing the media," though "a covered entity may not charge a

retrieval fee" for retrieving the PHI before copying it, "whether it be a standard retrieval fee or

one based on actual retrieval costs." 78 Fed. Reg. 5636 (AR000072).

### D.  2016 guidance

In 2016, HHS issued publicly available guidance regarding 45 C.F.R. § 164.524.

Guidance: Individuals' Right under HIPAA to Access Their Health Information 45 C.F.R.

§ 164.524, attached as Ex. A to Compl., ECF No. 1-1 ("2016 Guidance"). The guidance largely

takes the form of answers to frequently asked questions ("FAQ") concerning an individual's

right to access her PHI for a reasonable, cost-based fee under the 2013 rule. *See generally id.*

HHS does not consider the guidance as binding authority. The guidance includes three

statements that are at issue in this litigation.

First, the guidance notes that section 164.524's limitations on fees that can be charged for

individuals to access copies of their PHI apply "when an individual directs a covered entity to

send the PHI to the third party, . . . regardless of whether the individual has requested that the

copy of PHI be sent to herself, or has directed that the covered entity send the copy directly to a

third party designated by the individual (and it doesn't matter who the third party is)." *Id.* at 17–

18 (citing 45 C.F.R. § 164.524(c)(3)(ii)).

Second, the guidance notes that the reasonable cost of "labor for copying the PHI

requested by the individual" as set forth in section 164.524 should only include "labor for

creating and delivering the electronic or paper copy in the form and format requested or agreed

upon by the individual, once the PHI that is responsive to the request has been identified, retrieved or collected, compiled and/or collated, and is ready to be copied." *Id.* at 11 (citing 45 C.F.R. § 164.524(c)(4)(i)). As the guidance makes clear, HHS does not interpret the regulation as allowing covered entities to pass on the "costs associated with reviewing the request for access; or searching for and retrieving the PHI, which includes locating and reviewing the PHI in the medical or other record, and segregating or otherwise preparing the PHI that is responsive to the request for copying." *Id.* HHS explains that while § 164.524(c)(4)(i) has always prohibited a covered entity from passing on "labor costs related to search and retrieval," HHS's experience shows that "there is confusion about what constitutes a prohibited search and retrieval cost. . . ." *Id.*

Third, the guidance suggests at least three ways in which covered entities may calculate the fees they can charge for providing PHI to individuals in accordance with 45 C.F.R. § 164.524: (1) the actual costs that can be recouped; (2) average costs, by using a schedule of costs for labor; and (3) a flat fee of $6.50 for electronic copies of PHI that are also maintained electronically. 2016 Guidance at 15–16. The guidance does not require covered entities to use one of these options; nor does it prohibit covered entities from using alternative calculations to arrive at a reasonable, cost-based fee consistent Section 164.524. *Id.* Indeed, the guidance specifically provides that a covered entity may use alternative fee schedules, like those authorized by states, so long as the authorized costs "are permitted by the HIPAA Privacy Rule and . . . reasonable." 2016 Guidance at 16.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ciox is a vendor that contracts with health care providers—which are "covered entities" under HHS's HIPAA regulations and subject to the statutory and regulatory requirements implementing both section 264 of HIPAA and the HITECH Act, *see* 45 C.F.R. § 160.103—to

11

retrieve and disclose PHI for the health care providers with whom it contracts. Compl., ECF No. 1 ¶ 5. As such, it qualifies as a "business associate" under HIPAA. *See* 45 C.F.R. § 160.103.

In this lawsuit, Ciox challenges the 2013 rule on the basis that it impermissibly extended the Privacy Rule in two ways: first whereas the HITECH Act requires a covered entity to provide to an individual an electronic copy of her PHI contained in an EHR, the 2013 rule extended the requirement to all electronically maintained PHI, regardless of whether the PHI is contained in an EHR. *See* 78 Fed. Reg. 5631 (AR000067); and second, whereas the HITECH Act requires a covered entity to honor an individual's request for a copy of her electronically maintained PHI to be sent to a designated third party, the 2013 rule extends this requirement to all PHI, regardless of whether it is electronically maintained. 78 Fed. Reg. 5634 (AR000070).

Ciox also challenges the 2016 Guidance on multiple grounds. First, it argues that the Guidance is allegedly a binding legislative rule issued without notice and comment. *Id.* ¶ 69. Second, Ciox claims that the 2016 Guidance is arbitrary and capricious and contrary to law because (1) it applies the fee limitation of reasonable cost to an individual's request to transmit a copy of his or her PHI to a designated third party, enforcement action for noncompliance, *id.* ¶ 74; (2) it limits the fees that can be charged to exclude "technical staff time involved in the process of searching for and retrieving" electronic PHI, *id.* ¶ 76; and (3) it allegedly provided a "tripartite methodology for calculating allowable costs" that covered entities may charge for fulfilling individual requests for copies of their PHI. *Id.* ¶ 77. The complaint seeks declaratory and injunctive relief.

Defendants moved to dismiss the suit in its entirety under Rule 12(b)(1) and, in the alternative, under Rule 12(b)(6). ECF No. 9-1. Ciox opposed Defendants' motion and filed a motion for summary judgment. Mot. for Summ. J. of Pl., ECF No. 12. Defendants filed a reply in

support of their motion to dismiss, Reply Mem. in Supp. of Mot. to Dismiss, ECF No. 16, and

moved to stay summary judgment briefing pending the Court's adjudication of the motion to

dismiss. Opp'n to Def.'s Mot. to Stay Summ. J. Briefing, ECF No. 15. The Court denied

Defendants' motion to stay. Order, ECF No. 18. Defendants now oppose Ciox's motion for

summary judgment and cross-move for summary judgment.

## LEGAL STANDARDS

The APA "establishes a cause of action for those 'suffering legal wrong because of

agency action, or adversely affected or aggrieved by agency action.'" *Koretoff v. Vilsack*, 614

F.3d 532, 536 (D.C. Cir. 2010) (quoting 5 U.S.C. § 702). The APA provides for courts to "hold

unlawful and set aside agency action, findings, and conclusions" if they are "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C.

§ 706(2)(A), or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory

right," *id.* § 706(2)(C). "[W]hen a party seeks review of agency action under the APA, the

district judge sits as an appellate tribunal," *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077,

1083 (D.C. Cir. 2001), and the Court's function is simply "to apply the appropriate APA

standard of review to the agency decision based on the record the agency presents to the

reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985) (citation

omitted).

Judicial review of an administrative agency's actions under the APA is highly deferential.

The "arbitrary or capricious" standard is "'narrow' . . . as courts defer to the agency's expertise."

*Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting *Motor Vehicle

Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). A court

reviewing an agency's action under the APA may not "substitute its judgment for that of the

agency" merely because the court disagrees with what the agency has done. *In re Polar Bear Endangered Species Act Listing & Section 4(d) Rule Litig.*, 709 F.3d 1, 8 (D.C. Cir. 2013) (citation omitted).

## ARGUMENT

In enacting HIPAA in 1996, Congress authorized HHS to promulgate implementing regulations in the event that Congress itself failed to enact specific standards within 36 months. HIPAA § 264(c). Because no such standards were enacted by that date, HHS developed and promulgated implementing regulations in 2001. Those regulations have since been amended twice—once in 2002 and again in 2013. HHS has also published guidance further explaining the regulations and giving examples of how they operate.

The regulations, *inter alia*, established requirements for "covered entities" to protect the privacy of PHI, including an individual right to access such information. As noted above, Ciox is not a "covered entity"; rather, since it performs record-storage and record-provision work for various covered entities, it is a "business associate." *See* 45 C.F.R. § 160.103. The Privacy Rule imposes no obligations on business associates regarding what they may charge for their record-storage and record-provision work; instead, it is the covered entity's job to ensure compliance with the rule's fee limitation provisions.

The 2013 rule's modification to 45 C.F.R. § 164.524 was a lawful exercise of Defendants' rulemaking authority delegated by Congress and a reasonable construction of the statute. The 2016 guidance, moreover, was, at most, interpretive and, thus, not subject to notice-and-comment procedures. The guidance was also a reasoned clarification of the 2013 rule and established no new substantive requirements. Therefore, to the extent that Ciox's claims survive Defendants' pending Rule 12 motion, they fail on the merits.

**I.    The 2013 Rule is lawful.**

   *a.        HHS had statutory authority to promulgate the 2013 rule.*

Ciox asserts that the 2013 rule "(1) conflicts with the HITECH Act's plain language and
(2) exceeds HHS's lawful authority" because it expands the covered entities' obligations to
provide individuals, upon their request, with electronic copies of their PHI beyond PHI
maintained in an EHR and creates an obligation for covered entities to provide designated third
parties with copies of an individual's PHI beyond PHI maintained in an electronic form. Mem. of
P. & A. in Opp'n to Defs.' Mot. to Dismiss and in Supp. of Pl.'s Cross-Mot. for Summ J. ("Pl.'s
Br.") at 29, ECF No. 12-1. Ciox's argument fails because the 2013 rule was properly
promulgated pursuant to HHS's rulemaking authority specifically granted by Congress in section
264 of the HIPAA.

In interpreting a statute that an agency is entrusted to administer, courts follow "the
familiar two-step framework of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837, 842–43 (1984)." *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011). Under
*Chevron* step one, if Congress has "'directly spoken to the precise question at issue,'" then the
Court must "'give effect to [its] unambiguously expressed intent. . . .'" *Id.* (quoting *Chevron*, 467
U.S. at 842–43).

   *i.        Under Chevron step one, section 264 of HIPAA unambiguously vests HHS
              with authority to modify its health information privacy standards.*

At *Chevron* step one, HHS's interpretation of HIPAA's section 264(c) as permitting
subsequent modification of the Privacy Rule is consistent with the statute's plain language and
clear intent. Section 264(c) contains "a broad grant of authority from Congress to HHS as to the
regulation of medical information," *South Carolina Medical Ass'n*, 327 F.3d at 353. This
statutory provision authorizes the Secretary to "promulgate final regulations containing . . .

15

standards" with respect to the privacy of individually identifiable information. HIPAA § 264(c).

The HHS Secretary is expressly authorized to regulate "[t]he rights that an individual who is a

subject of individually identifiable health information should have and "[t]he procedures that

should be established for the exercise of such rights." *Id.* That authority necessarily gives the

Secretary the ability to change the standards and procedures he has established to reflect actual

experience gained in implementing pre-existing Privacy Rule as well as changes in technology

and medical record-keeping practices. *See generally* 45 C.F.R. § 160.104. It also encompasses

HHS's subsequent modification of its rule to allow individuals to request (1) their PHI in

electronic form, if it is electronically maintained in a designated record set, *see* 45 C.F.R.

§ 164.524(c)(2)(ii); and (2) that covered entities provide their PHI to a third party, even if the

PHI is not in electronic form, *id.* §164.524(c)(3). HIPAA § 264(b); *see also* HIPAA § 264(c).

Congress's intent to authorize the Secretary to modify the standards articulated in the

Privacy Rule as he determines appropriate is clear from the text and structure of HIPAA's

administrative simplification provisions as a whole. *Citizens for Responsibility & Ethics in Wash.

v. FEC*, 2018 U.S. Dist. LEXIS 130774, *72–74 ("It is a fundamental canon of statutory

construction that the words of a statute must be read in their context and with a view to their

place in the overall statutory scheme.") (quoting *FDA v. Brown & Williamson Tobacco Corp.*,

529 U.S. 120, 133 (2000)). Here, Congress provided the procedures to be followed "[i]f the

Secretary adopts a modification to a standard or implementation specification under this part,"

HIPAA, § 1175(b)(2), which indicates that Congress contemplated that HHS would likely

modify such standards articulated in the Privacy Rule. Moreover, in HIPAA, Congress also

specified how often HHS could modify similar standards regarding the electronic exchange of

health information by providing that the Secretary may "adopt modifications to the standards

16

(including additions to the standards), as determined appropriate, but not more frequently than once every 12 months." 42 U.S.C. § 1320d-3(b)(1). This too suggests that HHS may modify the Privacy Rule to account for updates to its health information privacy standards. *See Mobile Commc'ns Corp. of Am. v. F.C.C.*, 77 F.3d 1399, 1405 (D.C. Cir. 1996) (concluding that the agency's order was supported by a specific Congressional grant of authority in a related context).

HIPAA's legislative history, meanwhile, confirms that Congress knew that "technological innovation with respect to electronic transmission of health-care related transactions is progressing rapidly in the marketplace" and that Congress did not "intend to stifle innovation in this area." *See* 142 Cong. Rec. H 9473, 9541 (daily ed. July 31, 1996). HHS properly construed Congress's clear intent to allow HHS to update the Privacy Rule as necessary. Yet Ciox argues for precisely the opposite result—that Congress *sub silencio* deprived the Secretary of authority to modify the Privacy Rule regardless of the Secretary's experience with the Rule's operation and/or changes in technology and medical-record keeping practices.

Finally, in the HITECH Act, Congress has directed the Secretary to "amend such Federal regulations as required to make such regulations consistent with this subtitle," HITECH Act § 13421(b), 42 U.S.C. § 17951, while also confirming the Secretary's authority under the HIPAA privacy law. *Id.* § 3009(a) (providing that "[t]his title may not be construed as having any effect on the authorities of the Secretary under HIPAA privacy and security law," which is defined to include "section 264 of the Health Insurance Portability and Accountability Act of 1996" and "regulations under [that] provision[]"). The HITECH Act did not (invisibly) deprive the Secretary of his rulemaking authority under section 264, including his authority to modify existing HIPAA privacy rules when he determines that such action is appropriate.

17

ii.    *Alternatively, the Court should defer to HHS's interpretation of the statute under Chevron step two.*

Even if the text of the relevant statutes is ambiguous as to HHS's ability to modify the health information privacy standards—which it is not—the Court should defer to HHS's interpretation. If the "'statute is silent or ambiguous with respect to the specific issue,'" then, under *Chevron* step two, the Court must "defer to the administering agency's interpretation as long as it reflects 'a permissible construction of the statute.'" *Sherley,* 644 F.3d at 393 (quoting *Chevron*, 467 U.S. at 842–43).

At *Chevron* step two, an agency need not establish that its construction of the statute "was the only one it permissibly could have adopted," *Rust v. Sullivan*, 500 U.S. 173, 184 (1991); *Northpoint Tech. v. FCC*, 414 F.3d 61, 69 (D.C. Cir. 2005), that it is "the best interpretation of the statute," *United States v. Haggar Apparel Co.*, 526 U.S. 380, 394 (1999), or that it is "the most natural reading." *Pauley v. Beth Energy Mines*, 501 U.S. 680, 702 (1991). Rather, the agency's view is deemed permissible so long as it is not "flatly contradicted" by the statute. *Dep't of Treasury v. Fed. Labor Relations Auth.*, 494 U.S. 922, 928 (1990). Indeed, for Plaintiff to prevail, it must demonstrate that the statute "cannot bear the interpretation adopted by the Secretary" and that its alternative reading is the "only possible interpretation" of the statute. *Sullivan v. Everhart*, 494 U.S. 83, 89, 92 (1990).

Here, even assuming that Congress has not "spoken on the precise question at issue," *Sherley*, 644 F.3d at 393, the Court should defer to HHS's construction of section 264. In the 2001 Privacy Rule, HHS reasonably incorporated a mechanism to modify the health information privacy standards, *see* 45 C.F.R. § 160.104, and HHS's 2013 modifications reasonably interpret section 264 as authorizing the agency to strengthen an individual's right to access her PHI. HHS's interpretation is not "flatly contradicted" by § 264, which contains no language

18

forbidding HHS from making additional changes to its standards as the agency deems necessary. *Dep't of Treasury*, 494 U.S. at 928. To construe the Privacy Rule as being fixed at the moment of its promulgation in 2001 would defy logic because there is clearly a need for the Secretary to be able to modify and update health information privacy standards as technology and the health care industry evolve over time.

Moreover, Congress is aware of HHS's regulations regarding health information privacy standards, including HHS's procedures for modifying the Privacy Rule when modification is determined to be appropriate. *See* 45 C.F.R. § 160.104. Such awareness lends strong support for HHS's conclusion that it had the authority to modify the Privacy Rule here.  Indeed, "Congress is presumed to be aware of established practices and authoritative interpretations of the coordinate branches." *United States v. Wilson*, 290 F.3d 347, 357 (D.C. Cir. 2002). Here, no presumption is even necessary because the legislative history of the HITECH Act discusses the Privacy Rule in detail. *See* HITECH Act § 13421, 42 U.S.C. § 17951; *see also* HITECH Act § 3009(a); H.R. Rep. No. 111-16, at 489 (2009) (Conf. Rep.) (2009 U.S.C.C.A.N. 3, 82).  It is also well-established that "an agency's interpretation of a statute may be confirmed or ratified by subsequent congressional failure to change that interpretation. . . ." *State Farm*, 463 U.S. at 45.

Therefore, "[t]he failure of Congress to alter or amend [a statute], notwithstanding [a] consistent construction by the department charged with its enforcement, creates a presumption in favor of the administrative interpretation, to which [a court] should give great weight, even if [it] doubt[s] the correctness of the [administrative] ruling. . . ." *Costanzo v. Tillinghast*, 287 U.S. 341, 345 (1932). The presumption applies where, as here, a statute has been "consistently administered in [a particular] manner for [a significant period of time] without interference by Congress." *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 592–93 (1983) (opinion of

White, J.); *Fox Television Stations, Inc. v. Filmon X LLC*, 150 F. Supp. 3d 1, 27 (D.D.C. 2015),

*appeal filed* No. 16-7013 (D.C. Cir. Feb. 10, 2016) ("Inaction in the face of a consistent legal

interpretation can signal Congress's agreement."). It is also well-established that "congressional

acquiescence may sometimes be found from nothing more than silence in the face of an

administrative policy." *Haig v. Agee*, 453 U.S. 280, 300 (1981) (citation omitted).

Here, one need not presume Congress's awareness of the Secretary's interpretation of the

statute. Not only has Secretary previously invoked his authority under § 264 to modify the

Privacy Rule in 2002, *see* 67 Fed. Reg. 53,182 (2002), Congress also has specifically reviewed

HHS's health information privacy regulations—including the provisions concerning how the

Secretary would make modification to the Privacy Rule—in enacting the HITECH Act.  In so

doing, Congress adopted various definitions that HHS provided, directed HHS to amend various

provisions, and confirmed HHS's rulemaking authority under section 264(c). *See* HITECH Act

§ 13421, 42 U.S.C. § 17951; *see also* HITECH Act § 3009(a); H.R.  Rep. No. 111-16, at 489

(2009) (Conf. Rep.) (2009 U.S.C.C.A.N. 3, 82) (summarizing the state of HIPAA privacy law

before the HITECH Act was adopted and discussing the various provisions of the then-existing

Privacy Rule).

Given the longstanding and "consistent construction of a statute by those charged with its

enforcement" and the fact that Congress "has not acted to correct any misinterpretation of its

objectives despite its continuing concern with the subject matter," there is a "presumption in

favor of the administrative interpretation, to which [the Court] should give great weight. . . ."

*Guardians Ass'n*, 463 U.S. at 621.

In any event, Ciox's arguments regarding the Secretary's purported lack of rulemaking

authority prove too much. Ciox first argues that the modifications at issue "exceed[] the

limitations of 264(c)" because the "predicate for HHS's exercise of § 264(c) authority dissolved once Congress enacted such legislation," presumably the HITECH Act, or in the alternative, because section 264 purportedly expired in 2000. Pl's Br. 31. Ciox's argument that—by mandating modifications of some parts of the existing Privacy Rule and while leaving others intact Congress required that those portions that were left intact must remain untouched by the Secretary—lacks any legal basis and defies common sense. While Congress provided in section 264 a deadline by which HHS was to promulgate regulations to implement the privacy standards, nowhere does Congress indicate that HHS's authority under section 264 would cease after that deadline. Nor did Congress remove section 264 in subsequent legislation. *See, e.g.*, *Air Transport Ass'n of Amer., Inc. v. U.S. Dep't of Agric.*, 303 F. Supp 3d 28, 51-52 (D.D.C. 2018) *amended in part*, 317 F. Supp. 3d 385 (D.D.C. 2018) (concluding that a statutory provision had expired where subsequent legislation removed that provision's language from the statute). Instead, Congress in the HITECH Act expressly affirms HHS's authority under section 264(c). And while Congress mandated no changes with respect to certain parts of the 2001 and 2002 HIPAA Privacy Rules, neither did it alter the Secretary's authority to make changes he deems appropriate in the future.[10]

---

[10] Section 264(c) had been codified as 42 U.S.C. § 1320d-2. *See* HIPAA, § 264(c). While it was recently omitted from the United States code, this editorial omission does not affect the continuing validity of the provision; it lives on in the Statutes at Large, *see* 110 Stat. 2033–34. "[W]here the language of the Statutes at Large conflicts with the language in the United States Code that has not been enacted into positive law [*i.e.*, enacted as a statute], the language of the Statutes at Large controls." *Five Flags Pipe Line Co. v. Dep't of Transp.*, 854 F.2d 1438, 1440 (D.C. Cir. 1988) (*citing to United States v. Welden,* 377 U.S. 95, 98 n. 4, (1964)). Title 42 has not been enacted into positive law; thus, HIPAA § 264(c)'s current exclusion from the U.S. code does not diminish its legal effect. *See* 1 U.S.C. § 204; *see also Revock v. Cowpet Bay W. Condo. Assoc.*, 853 F. 3d 96, 105 n.11 (3d Cir. 2017).

Ciox's further argument that HHS "'cannot rely on its general authority' to trump 'a specific statutory directive,'" while true, has no application here. Pl.'s Br. 32 (quoting *Am. Petroleum Inst. v. EPA*, 52 F.3d 1113, 1119–20 (D.C. Cir. 1995)). The HITECH Act in no way prohibits HHS from modifying the Privacy Rule in the manners HHS did; to the contrary, and as noted before, it specifically affirmed HHS's authority to act under section 264. HHS has not ignored any statutory directive. The case law that Ciox cites for this proposition is inapposite; in *American Petroleum*, the agency's exercise of rulemaking authority conflicts with a specific objective of the Act it was tasked with administering. *See Am. Petroleum Inst.*, 52 F.3d at 1117. But "[t]he situation in *American Petroleum*, where an agency flouted a congressionally imposed restriction, is not present here." *Helicopter Ass'n Int'l Inc. v. FAA*, 722 F.3d 430, 435 (D.C. Cir. 2013). Instead, the Secretary exercised his authority under section 264 in the manner specified by Congress—to provide "[t]he rights that an individual who is a subject of individually identifiable health information should have" and "[t]he procedures that should be established for the exercise of such rights," HIPAA § 264(b)—and he retained the right, as expressly recognized in the regulations, to modify those rules.

Finally, Ciox argues that "§ 264(c) . . . almost violates the non-delegation doctrine." Pl.'s Br. at 32. Under this doctrine, "Congress may only 'confer decisionmaking authority upon agencies' if it also provides 'an intelligible principle to which the person or body authorized to act is directed to conform.'" *Rothe Dev., Inc. v. Dep't of Def.*, 107 F. Supp. 3d 183, 211 (D.D.C. 2015), *aff'd sub nom.* 836 F.3d 57 (D.C. Cir. 2016) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001)). The Supreme Court has "found the requisite 'intelligible principle' lacking in only two statutes, one of which provided literally no guidance for the exercise of discretion, and the other of which conferred authority to regulate the entire economy on the basis

of no more precise a standard than stimulating the economy by assuring 'fair competition.'"

*Whitman*, 531 U.S. at 474. Since those two decisions handed down over eight decades ago, the

Supreme Court has denied, without exception, delegation challenges to statutes containing far

fewer directions than provided in HIPAA. *See id.*

Here, Congress's guidance in HIPAA clearly satisfies the non-delegation doctrine. As the

Fourth Circuit has concluded, Congress's directions in section 264(b) regarding the subject

matters that HHS's health information privacy regulations must contain clearly set forth

intelligible principles for HHS to follow in exercising its authority. *S.C. Med. Ass'n*, 327 F.3d at

351. This is particularly so because section 264 must be read in the context of other statements

Congress made in the HIPAA, including (1) the general purpose of the statute to ""improve the

Medicare program . . . , the medicaid program . . . , and the efficiency and effectiveness of the

health care system, by encouraging the development of a health information system through the

establishment of standards and requirements for the electronic transmission of certain health

information," HIPAA § 261; and (2) Congress's instruction for the Privacy Rule to "be

consistent with the objective of reducing the administrative costs of providing and paying for

health care." HIPAA § 1172(b) (codified at 42 U.S.C.A. § 1320d–1(b)). That is, HIPAA guides

the Secretary's exercise of his authority by specifying an "area" in which, and a "purpose" for

which, he should act. *Detroit Int'l Bridge Co. v. Gov't of Canada*, 883 F.3d 895, 902–03 (D.C.

Cir. 2018) *as amended on denial of reh'g* (Mar. 6, 2018), *appeal filed* (Aug. 7, 2018). Taken

together, these statutory provisions "provide a general policy, describe the agency in charge of

applying that policy, and set boundaries for the reach of that agency's authority—all in keeping

with the intelligible principle test." *S.C. Med. Ass'n*, 327 F.3d at 351–52 (citing *Am. Power &*

23

*Light Co. v. S.E.C.,* 329 U.S. 90, 105 (1946)). Plaintiff's non-delegation challenge to the 2013 Rule therefore fails.[11]

        b.      *2013 rule is not arbitrary and capricious.*

Ciox's arbitrary or capricious APA claim, to the extent it makes one,[12] appears to be another version of its statutory authority arguments. Ciox seems to assert that because Congress created or extended certain privacy protections and obligations with respect to PHI maintained in an electronic form in the HITECH Act, it was arbitrary to apply those protections to PHI maintained in other formats. *See* Pl.'s Br. at 29. As shown above, the Secretary retained his rulemaking authority to modify the Privacy Rule requirements.

And because the same privacy concerns extend to PHI maintained in other formats, the same rules should apply. What Congress sought to regulate was disclosure of certain kinds of information, and the same privacy concerns apply regardless of the form in which PHI is maintained. Additionally, because the Privacy Rule had always applied to all formats in which PHI was created and maintained, the protections extended by the 2013 rule should similarly apply to all PHI, regardless of its form. *See* 78 Fed. Reg. 5631, 5634 (AR000070). To do otherwise would create an incentive to maximize use of non-electronic and/or non-EHR formats to avoid having to comply with the otherwise-applicable requirements—which is precisely the opposite of what Congress sought to achieve (*i.e.*, electronic advances in the creation and maintenance of PHI). The Secretary provided a reasoned explanation for his actions, and the

---

[11] Ironically, Ciox's non-delegation challenge to the 2013 regulations would, if accepted, apply equally to those parts of the 2002 regulations Ciox seeks to perpetuate.

[12] Ciox's brief contains no section explaining why the 2013 rule is arbitrary or capricious. *See generally* Pl.'s Br.

challenged portion of the 2013 Rule is therefore neither arbitrary nor capricious. *See Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983).

### II. The 2016 guidance is not subject to notice and comment.

Ciox likewise misses the mark in arguing that the 2016 guidance must be set aside because it is a substantive rule issued without notice and comment. *See* Compl. ¶¶ 66–69; *see also* Pl.'s Br. 33–40. The 2016 guidance, however, is a paradigmatic statement of policy.

Under the APA, before adopting a "substantive" (or "legislative") rule, an agency generally must publish a notice of proposed rulemaking in the Federal Register and accept public comment. 5 U.S.C. §§ 553(b)–(c). A "substantive rule establishes a standard of conduct which has the force of law." *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 38 (D.C. Cir. 1974). Thus, an "agency action that purports to impose legally binding obligations or prohibitions on regulated parties—and that would be the basis for an enforcement action for violations of those obligations or requirements—is a legislative rule." *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014). "[G]eneral statements of policy" and interpretative rules, in contrast, are exempt from these notice-and-comment requirements.[13] 5 U.S.C. § 553(b).

A statement of policy "advise[s] the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979) (quoting Attorney General's Manual on the APA 30 n.3 (1947)). It "explains how the agency will enforce a statute or regulation—in other words, how it will exercise its broad enforcement discretion or permitting discretion under some extant statute or rule. . . ."

---

[13] Because Defendants moved to dismiss this count on the basis that the guidance was a general statement of policy and, thus, not final agency action subject to judicial review under the APA, Defendants incorporate their relevant arguments from that motion to dismiss into this brief. *See* ECF No. 9-1 at 23–28; *see also* ECF No. 16 at 15–19.

*McCarthy*, 758 F.3d at 252. It serves to "appris[e] the regulated community of the agency's intentions" and "inform[] the exercise of discretion by agents and officers in the field." *Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 949 (D.C. Cir. 1987). And "a general statement of policy, like a press release," often "announces the course which the agency intends to follow in future adjudications." *Pac. Gas & Elec.*, 506 F.2d at 38. Accordingly, policy statements "are binding on neither the public nor the agency," and the agency "retains the discretion and the authority to change its position … in any specific case. . . ." *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997) (citations omitted).

As these principles make clear, the 2016 guidance—presented in the form of answers to commonly asked questions—is a quintessential policy statement. The guidance clearly is designed to inform the regulated community of HHS's views on the regulatory requirements, and its text consistently indicates the guidance's purely explanatory effect. *See e.g.*, 2016 Guidance at 1-2 (explaining the Privacy Rule's general requirement); *id.* at 2 (explaining the Rule's definition of a "designated record set"); *id.* at 2–3 (explaining which "categories of information are expressly excluded from the right of access" under 45 C.F.R. § 164.524). Indeed, nearly every answer to the frequently asked questions explicitly cites the Privacy Rule or section 164.524 as its basis. *See generally* 2016 Guidance. It is thus clear that the guidance does not break new ground but rather "expresses [the agency's] view of what the law [already] requires of a party. . . ." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 808 (D.C. Cir. 2006) (citation omitted).

Contrary to Ciox's position, the guidance does not state a new, substantive requirement when it notes that the fee limitations in the HITECH Act and the 2013 rule for the provision of an individual's PHI "applies regardless of whether the individual has requested that the copy of

PHI be sent to herself, or has directed that the covered entity send the copy directly to a third party directed designated by the individual." 2016 Guidance at 16. Although the 2001 Privacy Rule did not govern the fees that covered entities charge for providing protected health information to designated third parties, *see* 65 Fed. Reg. at 82,557, that was overtaken by the HITECH Act and subsequent modification of the Privacy Rule in 2013.

A natural reading of 42 U.S.C. § 17935(e) and 45 C.F.R. §164.524(c) makes clear that an individual's request for a copy of her PHI encompasses an individual's request that directs the covered entity to transmit a copy to a designated third party. *See* 42 U.S.C. § 17935(e)(1) ("the individual shall have a right to obtain from such covered entity a copy of [her protected health information] in an electronic format *and*, if the individual chooses, to direct the covered entity to transmit *such copy* directly to an entity or person designated by the individual") (emphases added);[14] 45 C.F.R. § 164.524(c)(3)(ii) (describing "an individual's request for access [that] directs the covered entity to transmit the copy of [PHI] directly to another person designated by the individual. . ."). Moreover, both the HITECH Act and the 2013 rule provide that the fee limitations applicable to individual requests for PHI copies also apply to those requests that seek to have the PHI copies transmitted to designated third parties. *See* 42 U.S.C. § 17935(e)(3) ("any fee that the covered entity may impose for providing such individual with a copy of such information (or a summary or explanation of such information) if such copy (or summary or explanation) is in an electronic form shall not be greater than the entity's labor costs in

---

[14] The HITECH Act's conference report confirms this interpretation of the statute by subsuming an individual's designation of a third party receiver within the individual's request for a copy of her PHI. *See* H.R. Rep. No. 111-16, at 496–97 (2009), 2009 U.S.C.C.A.N. 3, 89 (Conf. Rep.) ("The conference agreement allows an individual to *request their health information* in an electronic format if it is maintained in such a format *for a reasonable cost based fee* as it was in the House and Senate bills. The conference agreement permits the individual to *designate* that *the information be sent to another entity or person*.") (emphases added).

responding to the request for the copy (or summary or explanation)"); 45 C.F.R. § 164.524(c)(4)

("If the individual requests a copy of the [PHI] or agrees to a summary or explanation of such

information, the covered entity may impose a reasonable, cost-based fee. . . ."). The guidance's

reference to the fee limitation, therefore, merely treads the same ground. *See McCarthy*, 758 F.3d

at 252 (concluding that the challenged guidance was not a legislative rule because it "does not

impose any requirements").

Equally unpersuasive is Ciox's assertion that the guidance contains "new rules" for

calculating the cost-based fee limitations. Pl.'s Br. at 30–31. Again, the guidance explains HHS's

view of what is required under the 2013 rule. 2016 Guidance at 10 ("[I]t has always been

prohibited to pass on to an individual labor costs related to search and retrieval. . . .") Despite

Ciox's attempt to argue otherwise, *see* Pl.'s Br. at 30–31, the guidance is entirely consistent with

the 2013 rule's preamble language in this regard, which states that "a covered entity may *not*

charge a retrieval fee (whether it be a standard retrieval fee or one based on actual retrieval

costs)" for retrieving an individual's PHI. 78 Fed. Reg. at 5636 (AR000072) (emphasis added). It

is also consistent with the regulation itself, which limits fees in relevant part to "labor for

copying." 45 C.F.R. § 164.524(c)(4)(i); *see also* ECF No. 16 at 16–17.

Finally, contrary to Ciox's argument, the guidance's suggested options for how covered

entities could calculate a reasonable, cost-based fee for the provision of an individual's PHI

likewise is non-binding. The guidance nowhere limits covered entities to the three options it

provides. *See* 2016 Guidance at 15. As Defendants previously explained, the guidance merely

provides three ways in which the fees "may" be calculated; it clearly recognizes that covered

entities may use other methodologies to arrive at their calculations, such as adopting a state's fee

schedule, "where the State authorized costs are the same types of costs permitted under 45

C.F.R. [§] 164.524(c)(4). . . ."  2016 Guidance at 15; *see also* ECF No. 9-1 at 25–26; ECF No. 16

at 17–19. Because the guidance does not require covered entities to "conform to one or the other

option" in calculating a reasonable, cost-based fee for fulfilling an individual's request for a copy

of her PHI, *see Gen. Elec. Co. v. E.P.A.*, 290 F.3d 377, 384 (D.C. Cir. 2002), it is not a

legislative rule and Count II of Plaintiff's claims fails.

    If the court nonetheless concludes that the guidance is not a general statement of policy,

the guidance is alternatively an interpretive rule, not a legislative rule. "[T]he critical feature of

interpretive rules is that they are 'issued by an agency to advise the public of the agency's

construction of the statutes and rules which it administers.'" *Perez v. Mortg. Bankers Ass'n*, 135

S.Ct. 1199, 1204 (2015) (quoting *Shalala v. Guernsey Mem'l Hosp.,* 514 U.S. 87, 99 (1995)). At

most, the guidance "supplies crisper and more detailed lines than the authority being

interpreted." *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1112 (D.C. Cir.

1993). Explaining nuance in a regulation is the very point of interpretive guidance and does not

indicate that existing regulation has effectively been amended. As such, the guidance is not

subject to notice-and-comment requirements. *Id.* at 1113; *see also Mortgage Bankers Ass'n*, 135

S. Ct. at 1206.

### III. The 2016 guidance is reasonable and consistent with the HITECH Act and the 2013 Rule.

    The 2016 guidance is not only procedurally sound, it is substantively valid in all respects.

In Count III, Ciox challenges three aspects of the guidance under both 5 U.S.C. § 706(2)(A) and

(C): (1) the explanation that the Privacy Rule's fee limitation "applies *regardless* of whether the

individual has requested that the copy of the PHI be sent to herself, or has directed that the

covered entity send the copy directly to a third party designated by the individual," Compl. ¶ 49;

*see also id.* ¶¶ 71–75; (2) the "exclusion of skilled technical staff time involved in the process of

searching for and retrieving electronic [PHI]" from permissible fees that covered entities may charge for fulfilling an individual's request for her PHI, Compl. ¶ 76; and (3) the purported "tripartite methodology for calculating allowable costs under the Patient Rate," Compl. ¶ 77.[15] Pl.'s Br. at 40–43. But the 2016 guidance accords with the HITECH Act and the 2013 rule and amply meets the "minimal standards of rationality," *Troy Corp. v. Browner*, 120 F.3d 277, 283 (D.C. Cir. 1997) (citation omitted), to be upheld under 5 U.S.C. § 706(A) and (C). Ciox's arguments to the contrary fail at each turn.

  a.  *The guidance's description of how covered entities are to treat individual requests that covered entities send a copy of the individual's PHI to a third party does not conflict with the HITECH Act and is reasonable.*

Ciox argues that the challenged guidance is at odds with the HITECH Act because it explains that under the HITECH Act and the 2013 Privacy Rule, a covered entity may not charge more than a reasonable, cost-based fee for fulfilling an individual's request that a copy of her PHI be sent to a designated third party. Pl.'s Br. at 40–43; *see also* 2016 Guidance at 15. But that requirement already exists in the HITECH Act itself.

As already explained above, the HITECH Act required covered entities to charge no more than "the entity's labor costs in responding to the request for the copy" when providing the copy of an individual's PHI to the individual. 42 U.S.C § 17935(e)(3). To the extent that this provision of the HITECH Act does not itself require that covered entities charge no more than a fee limitation when it provides a copy of an individual's PHI to a designated third party, the 2013 rule clearly so requires. *See* 45 C.F.R. § 164.524(c)(3)(ii), *id.* § 164.524(c)(4) (imposing a reasonable fee limitation when "an *individual requests* a copy of [her PHI]" and characterizing

---

[15] In its summary-judgment motion, however, Ciox appears to only move for summary judgment on its first substantive challenge to the guidance under 5 U.S.C. § 706(2)(C), *see* Pl.'s Br. 40–43, and its third substantive challenge under 5 U.S.C. § 706(A), *see* Pl.'s Br. 43–45.

an individual's choice to request a copy of her PHI to be sent to a designated third party as

encompassed within the "*individual's request* for access" to a copy of her PHI) (emphasis

added). As explained above, this requirement in the 2013 rule is not "unambiguously

foreclose[d]" by the HITECH Act simply because the Act imposes a fee limitation only as to a

subset of requests for PHI that is covered by the Rule 2013 rule. *Vill. of Barrington v. Surface

Transp. Bd.,* 636 F.3d 650, 661 (D.C. Cir. 2011). This portion of the guidance complies with all

applicable APA standards.

> b.    *The guidance's explanation of which labor costs are to be counted in determining a reasonable, cost-based fee merely explains the 2013 rule and is procedurally and substantively valid.*

Next, Ciox claims that the guidance improperly "exclu[des] . . . skilled technical staff

time involved in the process of searching for and retrieving electronic protected health

information" from the costs that covered entities can pass on to individuals requesting their PHI.

According to Ciox, such costs are not excluded under 45 C.F.R. § 164.524. But Ciox is incorrect.

As Defendants explained above and in their briefs supporting their motion to dismiss, the

guidance is consistent with the regulation. The regulation merely permits covered entities to

include labor costs for "copying the [PHI] requested by the individual" and prohibits them from

charging for time spent finding the information *before* copying it. 45 C.F.R. § 164.524(c)(4)(i);

*see also* 78 Fed. Reg. at 5636 (AR000072) (while "labor costs included in a reasonable cost-

based fee could include skilled technical staff time spent to create and copy the electronic file,

such as compiling, extracting, scanning and burning [PHI] to media, and distributing the media .

. . . a covered entity may *not* charge a retrieval fee (whether it be a standard retrieval fee or one

based on actual retrieval costs)" (emphasis added). Indeed, as the guidance notes, "it has always

been prohibited to pass on to an individual labor costs related to search and retrieval."[16] 2016 Guidance at 10.

To the extent that Ciox challenges this requirement as irrational, its argument fails. The agency's decision is presumed valid under 5 U.S.C. § 706(2)(A), and the Court considers only whether it "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971) *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977). Here, HHS provided a reasoned explanation for why it was not permitting retrieval costs to be included in a reasonable, cost-based fee for fulfilling a request for electronically maintained PHI. HHS explains that "it has always been prohibited to pass on to an individual labor costs related to search and retrieval," as indicated in the 2013 rule's preamble, but its "experience in administering and enforcing the HIPAA Privacy Rule has shown there is confusion about what constitutes a prohibited search and retrieval cost and this guidance further clarifies this issue." 2016 Guidance at 10. Moreover, HHS noted that "this clarification is important to ensure that the fees charged [to the requestor] reflect only what the Department considers 'copying' for purposes of applying 45 C.F.R. § 145.524(c)(4)(i) and do not impede individuals' ability to receive a copy of their records."[17] *Id.* Nor do they impede Ciox's ability to negotiate or contract with a health care provider that pays for the costs of all the tasks the provider asks Ciox to perform.

---

[16] Defendants note that neither Ciox nor any similar data management company is prohibited from "passing on" to its client, the covered entity, the costs of retrieving and assembling the requested PHI pursuant to its contractual arrangement with the covered entity. If the covered entity wants Ciox to perform these duties, it up to the entity to pay for them and the extent or manner in which it does so is purely a contractual issue between private parties.

[17] Further, if Ciox is actually challenging HHS's interpretation of the rule as noted in the 2013 rule's preamble, the agency explains there that its interpretation "will ensure that the fee requirements for electronic access are consistent with the requirements for hard copies, which do not allow retrieval fees for locating the data." 78 Fed. Reg. 5636 (AR000072).

      c.     *The guidance's suggestions on how to calculate a reasonable, cost-based fee do not exceed HHS's authority and offer plausible options for covered entities to calculate their costs.*

Finally, Ciox argues that the suggestions in the guidance for how to calculate a reasonable, cost-based fee are arbitrary and capricious. Pl.'s Br. at 43–45. Specifically, Ciox argues that none of the three options provided are ideal for Ciox in all instances. *See* Pl.'s Br. at 44–45. But, as explained above and in Defendants' briefs in support of their motion to dismiss, the plain language of the guidance indicates that those suggestions are optional; covered entities need not adopt any one of the options for any, much less all, of the requests it receives.

More importantly, the suggestions are logical ways in which covered entities would presumably calculate fees for producing PHI in light of the regulatory requirements: actual costs, average costs, or a flat-rate fee. *See* 2016 Guidance at 15–16 (explaining that covered entities could calculate their actual costs, their average costs, use a flat fee for electronic copies of PHI maintained electronically, or use a state-authorized fee schedule if "the costs authorized by the state . . . are permitted by the HIPAA Privacy Rule and [are] reasonable.").

In addition, HHS explains the utility of each option: covered entities may generally opt to use an average cost or flat fee method but if an entity "receive[s] an unusual or uncommon type of request that it has not considered in setting up its fee structure . . . . . the entity may wish to calculate actual costs. . . ." 2016 Guidance at 15. In addition, HHS explains why it does not "consider per page fees for copies of PHI maintained electronically to be reasonable for purposes of 45 C.F.R. § 164.524(c)(4)." *Id.* at 14–15. According to HHS, because the per page fees "have become a proxy for fees charged for all types of access requests," HHS has learned that per page fees "do not appropriately reflect the permitted labor costs associated with generating copies from information maintained in an electronic form." *Id.* at 14. In providing explanations as to the utility of the suggested options that the covered entity may or may not choose to accept and in

offering its interpretation of whether per page fees are reasonable, HHS demonstrated that it "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal citation omitted). No more is required.

## CONCLUSION

For the foregoing reasons, summary judgement should be granted in favor of Defendants on all counts, and Ciox's motion for summary judgment should be denied.

Respectfully submitted,

Dated: September 14, 2018

JOSEPH H. HUNT
Assistant Attorney General

JEAN LIN
Acting Deputy Director

*/s/ Vinita B. Andrapalliyal*
Vinita B. Andrapalliyal
Trial Attorney
United States Department of Justice
Civil Division
Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Tel: (202) 305-0845
vinita.b.andrapalliyal@usdoj.gov